UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

|  |  |
|---|---|
| PLUMBERS, PIPEFITTERS & MES LOCAL UNION NO. 392 PENSION FUND, On Behalf of Itself And All Others Similarly Situated, | x x x x No. 11 CV 5097 (JFK) |
| Plaintiff, | x |
|  | x |
| v. | x |
|  | x |
| FAIRFAX FINANCIAL HOLDINGS LIMITED, et al., | x x |
|  | x |
| Defendants. | x |
|  | x |

------------------------------------------------------------

## MEMORANDUM OF LAW IN SUPPORT OF THE FAIRFAX DEFENDANTS' MOTION TO DISMISS THE CLASS ACTION COMPLAINT

Brian H. Polovoy
Jeffrey J. Resetarits
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

*Attorneys for Defendants Fairfax Financial Holdings Limited, Odyssey Re Holdings Corp., V. Prem Watsa, Trevor J. Ambridge, Greg Taylor, M. Jane Williamson, Robbert Hartog, Anthony F. Griffiths, Bradley P. Martin, and Brandon Sweitzer*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 6

    A.    The Parties.................................................................................................... 6

    B.    Procedural History ....................................................................................... 7

    C.    The Allegations In The Complaint................................................................ 9

ARGUMENT ........................................................................................................ 10

I.    Plaintiff's Claims Are Barred By The Statute Of Repose ................................. 10

    A.    Plaintiff Filed Its Complaint After The Repose Periods Expired ............... 10

    B.    Statutes Of Repose Are Not Subject To *American Pipe* Tolling ............... 12

II.    Plaintiff Fails To State A Claim Under Section 10(b) Of The Securities Exchange Act
of 1934 ............................................................................................................. 18

    A.    Plaintiff Fails To Plead A Material Misstatement With Particularity........ 19

    B.    Plaintiff Fails To Plead Loss Causation ..................................................... 20

    C.    Plaintiff Fails To Plead Scienter ................................................................ 26

III.    Plaintiff Fails To State A Claim Under Section 11 Of The Securities Act Of 1933 ........... 36

    A.    Plaintiff Lacks Standing To Assert Section 11 Claims............................... 36

    B.    Plaintiff's Section 11 Claims Do Not Meet The Heightened Pleading
Requirements Of Rule 9(b) ........................................................................ 38

IV.    Plaintiff's Claim Against OdysseyRe Is Barred Because OdysseyRe Did Not "Make"
Any Of The Challenged Statements ................................................................... 42

CONCLUSION..................................................................................................... 44

## TABLE OF AUTHORITIES

### CASES

In re Alstom SA Sec. Litig., 406 F. Supp. 2d 402 (S.D.N.Y. 2005)..............................39

In re Am. Express Co. Sec. Litig., 2008 U.S. Dist. LEXIS 74372
      (S.D.N.Y. Sept. 26, 2008)..........................................................................31

Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538 (1974) ....................................... *passim*

In re Authentidate Holding Corp. Sec. Litig., 2006 U.S. Dist. LEXIS 47971
      (S.D.N.Y. July 14, 2006) ..........................................................................38

In re Avista Corp. Sec. Litig., 415 F. Supp. 2d 1214 (E.D. Wash. 2005)....................22

Barnes v. Osofsky, 373 F.2d 269 (2d Cir. 1967) ......................................................36

Brockton Ret. Sys. v. Shaw Group, Inc., 540 F. Supp. 2d 464 (S.D.N.Y. 2008) ........33

Campo v. Sears Holdings Corp., 2010 U.S. App. LEXIS 7043 (2d Cir. Apr. 6, 2010) ..........28, 29

Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42 (2d Cir. 1991)..........................28

In re China Ne. Petrol. Holdings, Ltd. Sec. Litig.,
      2011 U.S. Dist. LEXIS 117711 (S.D.N.Y. Oct. 6, 2011) ...........................22, 23

In re Citigroup Inc. Sec. Litig., 753 F. Supp. 2d 206 (S.D.N.Y. 2010) .......................27

In re Compuware Sec. Litig., 386 F. Supp. 2d 913 (E.D. Mich. 2005) .......................26

In re CornerStone Propane Partners, L.P. Sec. Litig., 2006 U.S. Dist. LEXIS 25819
      (N.D. Cal. May 3, 2006) ..........................................................................26

DeMaria v. Andersen, 318 F.3d 170 (2d Cir. 2003) .................................................36

Dura Pharm., Inc. v. Broudo, 544 U.S. 336 (2005) ......................................20, 22, 25

ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.,
      553 F.3d 187 (2d Cir. 2009)..................................................................27, 31, 42

In re Estee Lauder Cos. Sec. Litig., 2007 U.S. Dist. LEXIS 38491
      (S.D.N.Y. May 21, 2007)..........................................................................23

In re Federated Dep't Stores, Inc. Sec. Litig., 2005 WL 696894 (S.D.N.Y. Mar. 25, 2005)........33

In re First Union Corp. Sec. Litig., 128 F. Supp. 2d 871 (W.D.N.C. 2001) ..................................28

First United Methodist Church of Hyattsville v. U.S. Gypsum Co., 882 F.2d 862
    (4th Cir. 1989).........................................................................................................14, 15

In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29 (2d Cir. 2009) ...............20, 21, 25, 26

Footbridge Ltd. Trust v. Countrywide Fin. Corp., 770 F. Supp. 2d 618 (S.D.N.Y. 2011)......12, 17

In re Gildan Activewear, Inc. Sec. Litig., 636 F. Supp. 2d 261 (S.D.N.Y. 2009) ..................27, 32

Glaser v. The9, Ltd., 772 F. Supp. 2d 573 (S.D.N.Y. 2011) ................................................. passim

In re Glaxo Smithkline PLC Sec. Litig., 2006 U.S. Dist. LEXIS 73893
    (S.D.N.Y. Oct. 6, 2006) ......................................................................................................23

In re Global Crossing, Ltd. Sec. Litig., 313 F. Supp. 2d 189 (S.D.N.Y. 2003)................36, 37, 38

Goplen v. 51job, Inc., 453 F. Supp. 2d 759 (S.D.N.Y. 2006)................................................20, 32

In re Hansen Natural Corp. Sec. Litig., 527 F. Supp. 2d 1142 (C.D. Cal. 2007) ........................22

Higginbotham v. Baxter Int'l, Inc., 495 F.3d 753 (7th Cir. 2007) ................................................29

In re IAC/InterActiveCorp. Sec. Litig., 695 F. Supp. 2d 109 (S.D.N.Y. 2010) ..........................39

In re IndyMac Mortgage-Backed Sec. Litig., 2011 U.S. Dist. LEXIS 67781
    (S.D.N.Y. June 21, 2011)....................................................................................................12

Int'l Fund Mgmt. S.A. v. Citigroup, Inc., 2011 U.S. Dist. LEXIS 113660
    (S.D.N.Y. Sept. 30, 2011) ..............................................................................................12, 15

In re JP Morgan Chase Sec. Litig., 363 F. Supp. 2d 595 (S.D.N.Y. 2005) .................................40

Janus Capital Grp., Inc. v. First Deriv. Traders, 131 S. Ct. 2296 (2011) .......................5, 6, 42, 43

Kalnit v. Eichler, 264 F.3d 131 (2d Cir. 2001) ............................................................................28

Ladmen Partners, Inc. v. Globalstar, Inc., 2008 U.S. Dist. LEXIS 76670
    (S.D.N.Y. 2008) ............................................................................................................39, 40

Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350 (1991)...........................15

In re Lehman Bros. Sec. & ERISA Litig., 684 F. Supp. 2d 485 (S.D.N.Y. 2010) .......................38

In re Lehman Bros. Sec. & ERISA Litig., 2011 U.S. Dist. LEXIS 40592
        (S.D.N.Y. Apr. 13, 2011)................................................................................12

Lentell v. Merrill Lynch & Co., 396 F.3d 161 (2d Cir. 2005)......................................................20

Lewis v. Casey, 518 U.S. 343 (1996) .........................................................................37, 38

Local No. 38 IBEW Pension Fund v. Am. Express Co., 724 F. Supp. 2d 447
        (S.D.N.Y. 2010)................................................................................31, 35

In re MRU Holdings Sec. Litig., 769 F. Supp. 2d 500 (S.D.N.Y. 2011)..................................29, 30

Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 597 F.3d 84 (2d Cir. 2010)....................13, 14

Malin v. XL Capital Ltd., 2005 U.S. Dist. LEXIS 27089 (D. Conn. Sept. 1, 2005) ....................23

In re Marsh & McClennan Co., Inc. Sec. Litig., 501 F. Supp. 2d 452 (S.D.N.Y. 2006).........40, 41

In re Maxim Integrated Prod., Inc. Sec. Litig., 639 F. Supp. 2d 1038 (N.D. Cal. 2009).........22, 24

Merck & Co., Inc. v. Reynolds, 130 S. Ct. 1784 (2010) ................................................15

In re Morgan Stanley Mortgage Pass-Through Certificates Litig.,
        2011 U.S. Dist. LEXIS 104280 (S.D.N.Y. Sept. 15, 2011)..............................................12

N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Grp.,
        720 F. Supp. 2d 254 (S.D.N.Y. 2010)...........................................................37, 38

Norris v. Wirtz, 818 F.2d 1329 (7th Cir. 1987), overruled on other grounds,
        Short v. Belleville Shoe Mfg. Co., 908 F.2d 1385 (7th Cir. 1990)....................................16

Novak v. Kasaks, 216 F.3d 300 (2d Cir. 2000) .......................................................27, 30

P. Stolz Family P'ship L.P. v. Daum, 355 F.3d 92 (2d Cir. 2004)....................................11, 14, 16

In re Pfizer, Inc. Sec. Litig., 538 F. Supp. 2d 621 (S.D.N.Y. 2008)...............................19

In re Philip Svcs. Corp. Sec. Litig., 383 F. Supp. 2d 463 (S.D.N.Y. 2004) ...............................42

Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc.,
        673 F. Supp. 2d 718 (S.D. Ind. 2009).............................................................28

Plumbers & Steamfitters Local 773 Pension Fund v.
        Canadian Imperial Bank of Commerce, 694 F. Supp. 2d 287 (S.D.N.Y. 2010)....28, 29, 32

In re Refco, Inc. Sec. Litig., 503 F. Supp. 2d 611 (S.D.N.Y. 2007)..............................39

In re Regeneron Pharms., Inc. Sec. Litig., 2005 U.S. Dist. LEXIS 1350
    (S.D.N.Y. Feb. 1, 2005) ..................................................................................28

Rombach v. Chang, 355 F.3d 164 (2d Cir. 2004) .............................................. *passim*

Ross v. Walton, 668 F. Supp. 2d 32 (D. D.C. 2009) ......................................23

Russo v. Bruce, 777 F. Supp. 2d 505 (S.D.N.Y. Mar. 28, 2011) ....................................27

San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc.,
    75 F.3d 801 (2d Cir. 1996) ...............................................................................25

In re Sawtek, Inc. Sec. Litig., 2005 U.S. Dist. LEXIS 39223 (M.D. Fla. Oct. 6, 2005) ...............26

In re Sierra Wireless, Inc. Sec. Litig., 482 F. Supp. 2d 365 (S.D.N.Y. 2007) ...............................33

Stevelman v. Alias Research Inc., 174 F.3d 79 (2d Cir. 1999) ....................................18

Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148 (2008) ...........................18

Stuart v. Am. Cyanamid Co., 158 F.3d 622 (2d Cir. 1998) ....................................13, 14

Take-Two Interactive Software, Inc. v. Brant, 2010 U.S. Dist. LEXIS 32120
    (S.D.N.Y. Mar. 31, 2010) ................................................................................11

Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.,
    531 F.3d 190 (2d Cir. 2008) ............................................................................35

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499 (2007) .............................19, 27, 29

In re Ultrafem Inc. Sec. Litig., 91 F. Supp. 2d 678 (S.D.N.Y. 2000) ...........................................39

W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100
    (2d Cir. 2008) ...................................................................................................37

In re Wachovia Equity Sec. Litig., 753 F. Supp. 2d 326 (S.D.N.Y. 2011) ...................................38

Warth v. Seldin, 422 U.S. 490 (1975) ...........................................................................37

## STATUTES

15 U.S.C. § 77k(a) ..........................................................................................................36

15 U.S.C. § 77m ..............................................................................................................11

15 U.S.C. § 78u-4 ...........................................................................................1, 19

28 U.S.C. § 1658(b) ...............................................................................................11

Fed. R. Civ. P. 9(b) ..............................................................................................18

## OTHER AUTHORITIES

73 Cong. Rec. S10186 (June 1, 1934) ...............................................................16

73 Cong. Rec. S8668 (May 12, 1934) ...............................................................16

S. Rep. No. 107-146 (May 6, 2002)....................................................................17

Brief for the U.S. Securities Exchange Commission as *Amicus Curiae*,
    Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 1990 WL 10012716 .........16, 17

Defendants Fairfax Financial Holdings Limited ("Fairfax"), Odyssey Re Holdings Corp. ("OdysseyRe"), V. Prem Watsa, Trevor J. Ambridge, Greg Taylor, M. Jane Williamson, Robbert Hartog, Anthony F. Griffiths, Bradley P. Martin, and Brandon Sweitzer (collectively, the "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss plaintiff's Class Action Complaint (the "Complaint") pursuant to Rules 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4.[1]

## PRELIMINARY STATEMENT

Plaintiff's counsel filed this same lawsuit five years ago on behalf of different Fairfax shareholders. Judge Daniels granted defendants' motions to dismiss, holding that the court lacked subject matter jurisdiction over securities fraud claims by Canadian plaintiffs against Canadian defendants based on purchases of Fairfax stock on a Canadian stock exchange. The U.S. plaintiff in the current case watched that first lawsuit from the sidelines for four years and moved to intervene months after final judgment was entered. Judge Daniels denied its motion to intervene, and the Second Circuit dismissed its appeal. The Second Circuit explicitly noted that, to the extent that a new complaint might be time-barred, that was the result of plaintiff's "counsel's refusal or failure to file a new complaint" at the appropriate time. Months after the Second Circuit dismissed its appeal, plaintiff's counsel changed the caption on the complaint, made a handful of cosmetic changes to the text, and filed the lawsuit anew.

This lawsuit was meritless in 2006; it is frivolous five years later. The original complaint did not allege scienter, it did not allege loss causation, and it lacked any hint of a motive to commit securities fraud. The Complaint here still suffers from these defects (which is

---

[1]     Citations to "Compl. ¶ __" are to plaintiff's Complaint dated July 25, 2011. A copy of the Complaint is attached as Exhibit A to the Declaration of Brian H. Polovoy dated December 16, 2011 ("Polovoy Decl.").

not surprising as there are no new allegations).  Now, however, it is also barred by the statute of

repose and an intervening decision from the Supreme Court that expressly bars the claim against

OdysseyRe.  Additionally, the new plaintiff lacks standing to assert Section 11 claims (because it

purchased its shares *before* stock was sold pursuant to the offerings it alleges contained material

misstatements), and the new plaintiff cannot assert loss causation (because it sold its shares

*before* its lawyers allege that Fairfax revealed its allegedly fraudulent accounting).

By way of background, in 2004 and 2005, federal and state regulators began a

broad investigation into the use by companies, insurers, and reinsurers of what regulators

referred to as "finite risk" insurance or reinsurance.  Regulators were concerned that "finite"

contracts – complex insurance products that are legal, wholly proper, and commonly used

commercially – were being misused by some companies to improperly burnish financial results

and mislead investors.  The regulators issued subpoenas to over 50 companies, insurers, and

reinsurers.  Fairfax announced that it, too, had received subpoenas seeking a broad range of

documents and information concerning its use of finite reinsurance.  Not surprisingly, Fairfax's

stock price dropped when Fairfax announced that regulators were investigating its finite

reinsurance transactions and that regulators had issued subpoenas in that regard (only to rebound

after the class period and rise steadily to over $400 per share where it remains today).

The SEC closed its investigation and, to date, almost six years later, no one has

taken any action against Fairfax or any of its officers and directors.  Plaintiff, however, alleges

that Fairfax, its officers, a subsidiary, and Fairfax's independent auditor, Pricewaterhouse-

Coopers LLP Chartered Accountants ("PwC Canada"), committed securities fraud from 2003 to

2006 by intentionally failing to disclose that Fairfax was improperly using and accounting for

finite reinsurance transactions and using other improper accounting.  Plaintiff rests this claim on

2

the fact that, almost a year after Fairfax disclosed that it had received subpoenas, Fairfax restated

certain financial statements.  The restatement, however, followed Fairfax's discovery of

accounting errors wholly unrelated to accounting for finite reinsurance and overwhelmingly

concerned those other issues (with only a small portion concerning a change in accounting for

two finite reinsurance transactions).  Indeed, the documents referenced in the Complaint make

plain that there was no link between the decline in Fairfax's stock price during the class period

and the supposed misstatements that plaintiffs allege.  Those documents instead show that the

decline in Fairfax's stock was the result of large underwriting losses caused by the devastating

hurricanes of 2004 and 2005, a "disinformation" campaign run by short sellers who profited

from the decline in Fairfax's stock price, and Fairfax's announcements that it had received

subpoenas from regulators investigating finite reinsurance.

      Plaintiff's claims fail for several independent reasons.  First, plaintiff's claims are

barred by the statute of repose.  The statute of repose for claims under the Securities Act of 1933

(the "Securities Act") is three years and begins to run from the effective date of the registration

statement (i.e., April 20, 2004 and January 25, 2005), and the statute of repose for claims under

the Securities Exchange Act of 1934 (the "Exchange Act") is five years and begins to run from

no later than the date of the last alleged misrepresentation (i.e., March 16, 2006).  In order for the

claims to be timely, plaintiff would have had to file its Securities Act claims by April 20, 2007

and January 25, 2008, respectively, and have had to file its Exchange Act claims by March 16,

2011.  Plaintiff did not file its Complaint until July 25, 2011, and therefore, its claims are barred

by the statute of repose.  The statute of repose was not tolled by the lawsuit filed on behalf of

other Fairfax shareholders in 2006, nor was it tolled by this plaintiff's motion to intervene in that

case, or this plaintiff's appeal from the dismissal of that case, which the Second Circuit summarily dismissed.

Second, even if plaintiff's claims were not barred by the statute of repose, plaintiff does not have standing to assert its Section 11 claims.  In order to have standing to bring a Section 11 claim, a plaintiff must make plausible allegations that it purchased securities issued pursuant to or traceable to the registration statement that is alleged to have included material misstatements or omissions.  Here, plaintiff states that it purchased its Fairfax stock ***before*** the stock offerings at issue even occurred.  Thus, as a matter of law, it simply did not purchase shares issued pursuant to the challenged registration statements.

Third, plaintiff cannot plead a material misstatement, loss causation, or scienter, each of which is an essential element of a Section 10(b) claim.

Plaintiff cannot plead a material misstatement because the relevant accounting errors that plaintiff identifies understated – rather than overstated – net earnings during the class period and therefore are not an actionable misstatement.

Plaintiff cannot plead loss causation because plaintiff sold all of its Fairfax stock before the alleged primary corrective disclosure, and therefore, as a matter of law, that disclosure could not have "caused" plaintiff's loss.  The other alleged "partial" corrective disclosures – which relate to Fairfax's receipt of a subpoena from the SEC as part of an industry-wide inquiry – did not "reveal the truth" that Fairfax fraudulently accounted for finite reinsurance and are, as a matter of law, insufficient to plead loss causation.

Plaintiff cannot plead scienter because no reasonable person would deem the inference of fraudulent intent in this case cogent and at least as compelling as any opposing inference.  Not only is there no allegation that the "Officer Defendants" sold their own Fairfax

stock (the most common indicator of scienter), the Officer Defendants in fact ***purchased*** significant amounts of Fairfax stock throughout the Class Period, a fact that is plainly inconsistent with an intent to commit securities fraud.  Putting aside that the individual defendants were investing in Fairfax, and had no motive, there is also no allegation of conscious misbehavior.  Plaintiff alleges that defendants fraudulently accounted for finite reinsurance contracts in order to inflate the value of Fairfax's assets and shareholders' equity.  Plaintiff's sole support for this allegation is the existence of an industry-wide SEC inquiry into finite reinsurance and Fairfax's restatement.  But these allegations do not give rise to any inference of fraudulent intent, let alone a strong inference of fraudulent intent.  Fairfax – like approximately 50 other insurance companies – received a subpoena from the SEC as part of an industry-wide investigation into finite reinsurance.  The SEC reviewed Fairfax's reinsurance contracts and closed the case without taking any action.  During the process of re-reviewing its reinsurance contracts for the SEC inquiry, Fairfax found two old contracts that were accounted for inaccurately and restated those contracts.  The restatement of the accounting for the two contracts had no impact on shareholders' equity and actually resulted in an increase in net earnings or decrease in net loss during the class period (in other words, if Fairfax had originally accounted for the two contracts correctly, its net earnings would have been better – not worse – during the class period).  Simply put, there is no fraud.

Finally, plaintiff's claim against Fairfax's subsidiary, OdysseyRe, is premised on the meritless argument that OdysseyRe can be held liable under Section 10(b) – even though OdysseyRe did not actually ***make*** any of the challenged statements – because it knew that allegedly false statements would be incorporated into Fairfax's financial statements.  Over a month before plaintiff filed its suit, the Supreme Court rejected this very argument in Janus

Capital Group, Inc. v. First Derivative Traders, 131 S. Ct. 2296 (2011).  Thus, plaintiff's claim

against OdysseyRe is barred by controlling Supreme Court precedent.

**STATEMENT OF FACTS**

A.    **The Parties**

*Plaintiff*:  Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund

("Plumbers Fund") is a fund operated by the Cincinnati, Ohio locals of three unions, including

the Plumbers & Pipefitters union, whose local funds appear frequently as plaintiffs and lead

plaintiff movants in putative securities class actions.  Plumbers Fund seeks to represent a class of

individuals and entities that "purchased securities listed or registered on an American exchange

and issued by [Fairfax] between and including May 21, 2003 and March 22, 2006" (the "Class

Period").  (Compl. p. 1.)  Plumbers Fund purchased its stock in Fairfax on July 2, 2004 and

September 9, 2004, which is **before** the date of the securities offerings that it challenges

(meaning it could not possibly have purchased shares of Fairfax stock issued "pursuant to" or

"traceable to" these securities offerings).  (Polovoy Decl. Ex. A (Schedule A to Plumbers Fund's

PSLRA certification).)

*Defendants*:  Fairfax is a Canadian corporation.  The individual defendants, all but

one of whom reside in Canada, served as directors and/or officers of Fairfax during the putative

Class Period.  (Compl. ¶¶ 25-32.)  Plaintiffs dub three of the individual defendants as the

"Officer Defendants" (id. ¶ 33):  V. Prem Watsa is the Chairman and Chief Executive Officer of

Fairfax and Chairman of OdysseyRe.  (Id. ¶ 25.)  Trevor Ambridge was the Chief Financial

Officer of Fairfax during part of the Class Period.  (Id. ¶ 26.)  Greg Taylor was Fairfax's CFO,

having been appointed to that position on May 13, 2005, approximately 10 months before the

end of the Class Period.  (Id. ¶ 27.)  The five other individual defendants are Robbert Hartog,

Anthony F. Griffiths, and Brandon Sweitzer, each of whom served on the Board of Directors of

Fairfax during all or part of the Class Period (id. ¶¶ 29-30, 32), Jane Williamson, who served as Fairfax's Chief Accounting Officer during the Class Period (id. ¶ 28), and Bradley P. Martin, who served as a Vice President and the Corporate Secretary of Fairfax during the Class Period. (Id. ¶ 31.)[2]  The remaining two defendants are OdysseyRe and Fairfax's auditors, PwC Canada.

Notably, plaintiff does not allege that any individual defendant sold any stock during the purported Class Period.  Indeed, as to the three Officer Defendants against whom plaintiff purports to allege scienter, all three ***purchased*** significant amounts of Fairfax stock (two of them regularly) during the Class Period.  (Polovoy Decl. Ex. B.)

**B.  Procedural History**

On April 11, 2006, the first of five shareholder class action lawsuits was filed against Fairfax and certain of its executives.  (Polovoy Decl. ¶ 4, Ex. C.)  Judge George B. Daniels granted the unopposed motion of ten Canadian investment funds affiliated with CI Financial Inc. (the "CI Funds") to consolidate the lawsuits, to appoint the CI Funds as lead plaintiffs, and to approve their selection of Grant & Eisenhofer P.A. as lead counsel.  (Id.)  Grant & Eisenhofer is one of three law firms representing Plumbers Fund in the current lawsuit.

Following its appointment as lead plaintiff, the CI Funds filed an Amended Consolidated Class Action Complaint (the "CI Funds' Complaint") against Fairfax, certain of its officers, OdysseyRe, and PwC Canada.  (Id. ¶ 5.)  Defendants moved to dismiss the CI Funds' Complaint on multiple grounds, several of which are substantively identical to the arguments made in this motion to dismiss.  (Id.)  While the motions to dismiss were awaiting decision, the

---

[2]     We advised plaintiff's counsel orally on October 11, 2011 that defendant Robbert Hartog had died before plaintiff filed its Complaint.  On December 13, 2011, we filed a suggestion of death pursuant to Rule 25 of the Federal Rules of Civil Procedure.  (Dkt. No. 25.)

CI Funds withdrew as lead plaintiffs (but remained as the only named plaintiffs) and the Plumbers Fund filed a motion seeking appointment as the "replacement" lead plaintiff.  (Id.)

Prior to ruling on the motion for appointment as new lead plaintiff, the district court granted defendants' motions to dismiss for lack of subject matter jurisdiction.  (Id. ¶ 6, Ex. D.)  The CI Funds, together with the non-party Plumbers Fund, filed a motion to alter or amend the judgment, which the court denied.  (Id., Ex. E.)  The Plumbers Fund then filed a motion to intervene, which was also denied.  (Id., Ex. F.)  From the time Plumbers Fund first sought appointment as a replacement lead plaintiff, which was well before the statute of repose on its securities fraud claims ran, defendants repeatedly stated, in writing, that if Plumbers Fund wished to assert claims, it was free to file its own lawsuit.  (Polovoy Decl. ¶ 7.)  Plumbers Fund elected not to file its own lawsuit.

The CI Funds did not appeal from the dismissal of their lawsuit.  Even though Plumbers Fund was not a party, it appealed the order dismissing the CI Funds' Complaint.  (Id. ¶ 8.)  On May 24, 2011, the Second Circuit issued a summary order dismissing Plumbers Fund's appeal because (i) Plumbers Fund was not a party to the underlying case and "only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment," and (ii) Plumbers Fund had not filed a notice of appeal from the district court's decision denying its motion to intervene.  (Id. Ex. G.)  The Second Circuit noted that Plumbers Fund argued that it should have standing to appeal the dismissal of the CI Funds' Complaint because "the instant judgment might affect its ability to bring a separate action insofar as *statute of limitations defenses may now preclude such a filing*."  The Second Circuit continued, "Without in any way intimating a view on that question, we conclude that such an indirect effect, *which results . . .*

***from counsel's refusal or failure to file a new complaint***, is insufficient to confer appellate

standing."  (Id. (emphasis added).)

On July 25, 2011, over five years after the end of the Class Period and over five

years after the original (now dismissed) lawsuit was filed against defendants, Plumbers Fund and

its attorneys filed this action.  Notably, no Fairfax shareholder other than Plumbers Fund filed a

motion to be appointed as lead plaintiff under the PSLRA, and Plumbers Fund's brief did not

mention its role in the prior identical lawsuit or the dismissal of its appeal in that lawsuit.  (Dkt.

Nos. 5-7.)  On October 12, 2011, this Court granted Plumbers Fund's unopposed motion to be

appointed as lead plaintiff.  (Dkt. No. 9.)

### C.     The Allegations In The Complaint

Plumbers Fund's Complaint is substantively identical to the CI Funds' Complaint

that plaintiff's lawyers filed on behalf of the CI Funds in 2007.  (A comparison of the Plumbers

Fund's Complaint to the CI Funds' Complaint is attached as Ex. H to the Polovoy Decl.)  For all

its length, it boils down to an allegation that Fairfax, the Individual Defendants, OdysseyRe, and

Fairfax's independent auditor, PwC Canada, intentionally defrauded Fairfax's shareholders by

materially misstating:  (1) the accounting for finite reinsurance contracts, (2) the quality of its

internal controls, (3) the valuation of "off-shore investments," and (4) the accounting for an

investment in Zenith National Investment Corp., investments in convertible bonds, and certain

intercompany transactions.  (Compl. ¶¶ 95-97, 114-19, 120-42, 143-54, 155-67.)[3]

---

[3]     Plaintiff asserts claims pursuant to Sections 11 and 15 of the Securities Act against Fairfax and each of the
individual defendants (collectively, the "Securities Act Defendants").  (Counts III – VI.)  Plaintiff asserts claims
pursuant to Sections 10(b) and 20(a) of the Exchange Act against Fairfax and the Officer Defendants (collectively,
the "Exchange Act Defendants").  (Counts I, II.)  Plaintiff also asserts a Section 10(b) claim against OdysseyRe and
PwC.  (Count I.)

Notably, plaintiff only purports to allege loss causation with respect to one of the alleged misstatements – namely, Fairfax's accounting for finite reinsurance.  (Id. ¶¶ 549-64.) Plaintiff does not purport to allege loss causation with respect to its allegations about Fairfax's internal controls, valuations of off-shore investments, or accounting for intercompany transactions.  (Id.)  This means that these other various allegations are irrelevant.

Plaintiff asserts that the alleged fraud with regard to finite reinsurance was disclosed to the market through a series of press releases and conference calls regarding requests for information from the SEC and information sharing with the U.S. Attorney's office.  (Id. ¶¶ 549-64.)  But, as plaintiff acknowledges, the SEC closed its inquiry without taking any action, thereby undermining any inference that plaintiff hoped to draw from the SEC inquiry.  (Id. ¶ 220.)

Plaintiff also asserts that Fairfax's alleged fraud was demonstrated by its restatement.  The restatement, however, overwhelmingly related to matters other than finite reinsurance contracts.  It changed the accounting for only two finite reinsurance contracts, and the change in accounting for those contracts had no impact on shareholders' equity and actually resulted in an increase in net earnings or decrease in net loss during the Class Period.  (Id. ¶ 113.) Thus, plaintiff's repeated attempts to suggest that the restatement of certain finite reinsurance contracts was responsible for a decrease in shareholders' equity is belied by the text of the restatement itself.

## ARGUMENT

## I.    PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF REPOSE

### A.    Plaintiff Filed Its Complaint After The Repose Periods Expired

It is beyond dispute that plaintiff filed its Complaint outside of the limitations and repose periods for claims under Section 11 of the Securities Act and Section 10(b) of the Exchange Act.  Both statutes are governed by a bifurcated limitation period that includes a

shorter statute of limitations and a longer statute of repose.  Section 11 has a one-year statute of

limitations and a three-year statute of repose,[4] and Section 10(b) has a two-year statute of

limitations and a five-year statute of repose.[5]  The three-year statute of repose period for Section

11 claims begins to run on the effective date of the registration statement, and the five-year

statute of repose for Section 10(b) claims begins to run on the date of the misrepresentation.  See

P. Stolz Family P'ship L.P. v. Daum, 355 F.3d 92, 104 (2d Cir. 2004); Take-Two Interactive

Software, Inc. v. Brant, 2010 U.S. Dist. LEXIS 32120, at *15-16 (S.D.N.Y. Mar. 31, 2010).

      Plaintiff alleges that the Securities Act Defendants made material misstatements

in two stock offerings:  the October 28, 2004 offering, whose registration statement went

effective on April 20, 2004 (Count III) and the September 28, 2005 offering, whose registration

statement went effective on January 25, 2005 (Count V).  (Compl. ¶¶ 590-598, 604-612.)  In

order to pursue a Section 11 claim for these offerings, plaintiff would have had to file its

Complaint by April 20, 2007 for the earlier offering and January 25, 2008 for the later offering.

Plaintiff, however, did not file its Complaint until July 25, 2011.  Thus, its Section 11 claims are

barred by the statute of repose.

      Plaintiff alleges that the Exchange Act Defendants made misstatements

throughout the Class Period.  (Id. ¶¶ 223-449.)  The last of the alleged misstatements occurred on

---

[4]      The limitations period for Section 11 claims is governed by Section 13 of the Securities Act, which provides that "[n]o action shall be maintained to enforce any liability created under section 77k [Section 11] . . . unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence . . . .  In no event shall any such action be brought to enforce a liability created under section 77k [Section 11] . . . more than three years after the security was bona fide offered to the public."  15 U.S.C. § 77m.

[5]      The limitations period for Section 10(b) claims is governed by the Sarbanes-Oxley Act of 2002, which provides that "a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws . . . may be brought not later than the earlier of – (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation."  28 U.S.C. § 1658(b).

March 16, 2006.  (Id. ¶ 448.)  Even assuming that the repose period should start to run from the latest possible date, being the date of the last alleged misstatement, rather than an earlier point in time, plaintiff had to file its Complaint by March 16, 2011 – five years after the last alleged misstatement.  Plaintiff, however, did not file its Complaint until July 25, 2011.  Thus, its Section 10(b) claims are barred by the statute of repose.

> **B.**     **Statutes Of Repose Are Not Subject To *American Pipe* Tolling**

Plaintiff will undoubtedly assert that the repose periods should be tolled under American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974).  Courts in this Circuit are currently divided on whether statutes of repose are subject to American Pipe tolling.  See Footbridge Ltd. Trust v. Countrywide Fin. Corp., 770 F. Supp. 2d 618 (S.D.N.Y. 2011) (holding that the statute of repose governing Section 11 claims is not subject to tolling under American Pipe); In re IndyMac Mortgage-Backed Sec. Litig., 2011 U.S. Dist. LEXIS 67781 (S.D.N.Y. June 21, 2011) (same); In re Lehman Bros. Sec. & ERISA Litig., 2011 U.S. Dist. LEXIS 40592 (S.D.N.Y. Apr. 13, 2011) (same).  But see In re Morgan Stanley Mortg. Pass-Through Certificates Litig., 2011 U.S. Dist. LEXIS 104280 (S.D.N.Y. Sept. 15, 2011) (holding that the statute of repose for Section 11 claims is subject to tolling under American Pipe); Int'l Fund Mgmt. S.A. v. Citigroup, Inc., 2011 U.S. Dist. LEXIS 113660 (S.D.N.Y. Sept. 30, 2011) (same).

This Court should follow the well-reasoned opinions in Footbridge, Lehman and IndyMac and hold that statutes of repose are not subject to American Pipe tolling.  The Court should decline to follow Morgan Stanley and Citigroup because those decisions failed to consider two important justifications the Supreme Court provided for tolling the statute of limitations in American Pipe – namely, the "purpose" of the limitations period and the "legislative scheme" of the relevant statute.  If those factors are considered, as they must, it is

clear that the statutes of repose that govern Section 11 of the Securities Act and Section 10(b) of the Exchange Act should not be tolled.

American Pipe concerned a statute of limitations, not a statute of repose.  In American Pipe, the Supreme Court held that the filing of a class action "tolls the running of the statute [of limitations] for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status."  414 U.S. at 553.  In reaching this conclusion, the Court identified two important factors that guided its decision:  (1) a tolling rule was consistent with the "purpose" of a statute of limitations, id. at 554, and (2) a tolling rule was consistent with the "legislative scheme" of the antitrust laws at issue in that case.  Id. at 557-58.  The Court explained that the purpose of a statute of limitations is to "put [an] adversary on notice" of claims against them.  Id. at 554.  The Court found that tolling the statute of limitations would not impact this purpose because the defendant is already on notice from the earlier filed complaint.  See id. at 554-55.  The Court also reviewed the legislative history of the statute of limitations for the antitrust laws and found that Congress viewed the statute of limitations as "strictly procedural" and "in no way affect[ing] the substantive rights of individual litigants."  Id. at 558 n.29.  As a result, the Court concluded that "a judicial tolling of the statute of limitations does not abridge or modify a substantive right afforded by the antitrust acts . . . ."  Id.

In contrast to the situation in American Pipe (but consistent with its reasoning), judicial tolling is wholly inconsistent with the "purpose" of a statute of repose and is contrary to the "legislative scheme" of the securities laws (where there is a bifurcated statute of limitations and statute of repose, as opposed to solely a limitations period under American Pipe).  First, statutes of limitation are fundamentally different from statutes of repose.  "A statute of

limitations creates an affirmative defense where plaintiff failed to bring suit within a specified period of time after his cause of action accrued . . . ." <u>Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 597 F.3d 84, 88 n.4 (2d Cir. 2010) (citing <u>Stuart v. Am. Cyanamid Co.</u>, 158 F.3d 622, 627 (2d Cir. 1998)).  It "is a procedural device that operates as a defense to limit the remedy available from an existing cause of action."  <u>First United Methodist Church of Hyattsville v. U.S. Gypsum Co.</u>, 882 F.2d 862, 865 (4th Cir. 1989).  In contrast, a statute of repose is substantive.  It is an inherent feature of a right of action.  "[A] statute of repose acts to define temporally the right to initiate suit against a defendant after a legislatively determined time period."  <u>Stolz</u>, 355 F.3d at 102.  "Unlike a statute of limitations, a statute of repose is not a limitation of a plaintiff's remedy, but rather defines the right involved in terms of the time allowed to bring suit."  <u>Id.</u>; <u>see</u> <u>Ma</u>, 597 F.3d at 88 n.4 ("a statute of repose *extinguishes* a plaintiff's cause of action after the passage of a fixed period of time") (emphasis in original); <u>First United</u>, 882 F.2d at 865 ("A statute of repose creates a substantive right in those protected to be free from liability after a legislatively-determined period of time.").

Because statutes of limitation are procedural and operate merely to limit a plaintiff's remedy, they can be subject to "various forms of tolling."  <u>Stolz</u>, 355 F.3d at 102; <u>see</u> <u>Ma</u>, 597 F.3d at 88 n.4.  Because statutes of repose are substantive and "affect the availability of the underlying right," <u>Stolz</u>, 355 F.3d at 102 (citation omitted), they cannot be subject to tolling.  Therefore, "a statute of repose begins to run without interruption once the necessary triggering event has occurred, even if equitable considerations would warrant tolling or even if the plaintiff has not yet, or could not yet have, discovered that she has a cause of action."  <u>Id.</u>  As the Fourth Circuit has explained:

> Statutes of repose are based on considerations of the economic best interests of the public as a whole and are substantive grants of immunity based on a

> legislative balance of the respective rights of potential plaintiffs and defendants struck by determining a time limit beyond which liability no longer exists. Thus, as a general rule, a statute of limitations is tolled by a defendant's fraudulent concealment of a plaintiff's injury . . . .  Conversely, a statute of repose is typically an absolute time limit beyond which liability no longer exists and is not tolled for any reason because to do so would upset the economic balance struck by the legislative body.

First United, 882 F.2d at 866 (citations omitted).

Thus, applying judicial tolling to a statute of repose would fundamentally alter the "purpose" of a statute, i.e., to provide defendants with a date certain after which no new suits can be filed.  See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 363 (1991) (stating that "[b]ecause the purpose of the [repose period] is clearly to serve as a cutoff, we hold that tolling principles do not apply to that period"); see also id. at 378 (referring to the statute of repose as an "absolute time bar") (Kennedy, J., dissenting).[6]

Second, applying the American Pipe tolling doctrine to the statute of repose in this case would be inconsistent with the "legislative scheme" of the securities laws.  Unlike the antitrust laws in American Pipe that only included a statute of limitations, the securities laws at issue here (Sections 10(b) and 11) include a shorter statute of limitations and a longer statute of repose.  This bifurcated limitations period serves no purpose unless the outer limit (the repose period) is absolute.  Otherwise, the securities laws would essentially have two statutes of limitation, which would be unnecessary and redundant.  See Lampf, 501 U.S. at 363 (stating that, where there is a bifurcated limitations period, the inclusion of a repose period "can have no

---

[6]    In Citigroup, Judge Stein downplayed the significance of Lampf, in part, because it was not a class action.  Citigroup, 2011 U.S. Dist. LEXIS 113660, at *23-24.  But the Supreme Court recently cited Lampf favorably in the context of a securities class action.  See Merck & Co., Inc. v. Reynolds, 130 S. Ct. 1784, 1797 (2010).  In Merck, the defendant expressed concern that modifying the trigger for when statutes of limitations begin to run in securities cases would "give life to stale claims or subject defendants to liability for acts taken long ago."  Id.  The Supreme Court stated that the defendant's concerns were unwarranted because "Congress' inclusion in the statute of an unqualified bar on actions instituted '5 years after such violation,' § 1658(b)(2), giving defendants total repose after five years, should diminish that fear.  Cf. Lampf, 501 U.S. at 363 (holding comparable bar not subject to equitable tolling)."  Id.

15

significance in this context other than to impose an outside limit") (internal quotations and citations omitted).

An examination of the legislative history underscores this point.  When originally enacted in 1933, the repose period under the Securities Act "was a lengthy ten years."  Stolz, 355 F.3d at 105.  The very next year, Congress reduced that period to three years in response to fears that the overlong ten-year period would interfere with the conduct of business.  As one senator explained:

> The effort has been made to meet objections and criticisms and complaints which have come to the committee that the present act is too drastic, and is interfering with business.  We have tried to meet those objections by this amendment . . . .

73 Cong. Rec. S8668 (May 12, 1934).  Another senator observed that the shorter repose period was intended to "give greater assurance to the honest officials of a corporation" that they would not be exposed to lingering liabilities.  73 Cong. Rec. S10186 (June 1, 1934).  From this history, it is "pellucid that Congress included statutes of repose because of fear[s] that lingering liabilities would disrupt normal business and facilitate false claims.  It was understood that the three-year rule was to be absolute."  Norris v. Wirtz, 818 F.2d 1329, 1332 (7th Cir. 1987) (citing 73 Cong. Rec. 8198-8203 (May 7, 1934)), overruled on other grounds, Short v. Belleville Shoe Mfg. Co., 908 F.2d 1385 (7th Cir. 1990).

Considering this same legislative history, the SEC has recognized that an absolute statute of repose, which is not subject to tolling, is integral to the effective functioning of the securities laws and the markets it regulates:

> [T]he outside period of repose in the 1933 and 1934 Act periods reflects a general congressional policy against tolling of securities claims . . . .  This policy stems from the view that, if tolling is available, potential defendants will be subject to contingent liabilities for indefinite periods.  Not only might this 'deter [people] from serving on boards of directors' because of fear of lingering liabilities, 78 Cong. Rec. 8200 (1934) (remarks of Sen. Byrnes), it

16

could make it more difficult for public companies to 'assess the impact of possible litigation under rule 10b-5' for financial statement purposes, thereby possibly adversely affecting the accuracy of their disclosure and depriving investors of information . . . .

Brief for the Securities Exchange Commission as *Amicus Curiae*, Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 1990 WL 10012716, at *28-29 (footnote omitted)(citation omitted).

Similarly, when Congress lengthened the limitations periods for Section 10(b) violations in the Sarbanes-Oxley Act of 2002, certain senators indicated that they did not believe the extension was necessary because the then-current limitations periods struck a delicate balance that provided people who have been defrauded a reasonable opportunity to file suit, while at the same time "provid[ing] certainty in the markets."  S. Rep. No. 107-146, at 28 (May 6, 2002).  Recognizing that the extension was going to pass, certain senators included a statement "to clarify our understanding of the intended parameters of that extension."  Id. at 29.  In a subsection entitled "Five-year maximum limit," the senators stated that, consistent with existing law, "[w]here there is a bifurcated limitations period . . . [t]he [outer limit] is a period of repose inconsistent with tolling."  Id.

Based on the bifurcated structure of the limitations period and the legislative history, it is clear that Congress attempted to strike a delicate balance between the ability of defrauded investors to bring suits and the need for businesses to have certainty that, after a certain period of time, they would not be subject to additional lawsuits.  The Court should not alter that delicate balance.  See Footbridge, 770 F. Supp. 2d at 627 (noting that, if the repose period in the securities laws is too short as currently written, "[l]awmakers are free to adjust the repose period as they have in the past").

Because American Pipe tolling is inconsistent with (i) the "purpose" of a statute of repose and (ii) the "legislative scheme" of the securities laws, the repose periods that govern

Sections 10(b) and 11 cannot be tolled.  That being the case, Plumbers Fund's Complaint should be dismissed with prejudice as time barred.[7]

## II.   PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 10(B) OF THE SECURITIES EXCHANGE ACT OF 1934

Even if the Complaint were not time barred, plaintiff fails to state a claim under Section 10(b).  To state a claim under Section 10(b), a plaintiff must allege "(1) a material misrepresentation or omission by defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 157 (2008).  Section 10(b) claims are further subject to heightened pleading standards pursuant to Rule 9(b) and the PSLRA.

Rule 9(b) requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  This standard requires the plaintiff to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were

---

[7]       Plumbers Fund's claims are also barred by the statute of limitations itself.  Following Judge Daniels' decision and order granting defendants' motion to dismiss, the Court entered judgment dismissing the CI Funds' complaint on March 30, 2010, and the CI Funds did not appeal, meaning that judgment was final on April 29, 2010.  Plumbers Fund did not file this lawsuit until 15 months later, on July 25, 2011.  Plumbers Fund (like its lawyers) was plainly aware of its claims against defendants no later than the date on which the first of the putative class actions was filed (i.e., April 11, 2006).  As to its Section 11 claims, even if the one-year statute of limitations was tolled (or did not start) until the judgment dismissing the CI Funds' Complaint became final, the limitations period ran and expired during the 15-month period following that final judgment.  Similarly, as to its Section 10(b) claims against OdysseyRe (and PwC Canada), who were first named in the CI Funds' February 8, 2007 amended complaint, the two-year statute of limitations ran and expired (running from April 11, 2006 to February 8, 2007, and then running again from April 29, 2010 until it ran out in June 2011).  The statute of limitations was not tolled during the pendency of Plumbers Fund's appeal, because Plumbers Fund, not CI Funds, filed a notice of appeal.  The filing of a notice of appeal by a non-party (which appeal is summarily dismissed by the Court of Appeals) does not toll the statute of limitations that would otherwise apply to that non-party's claims.  This is especially the case where, as here, the non-party was told repeatedly that it was free to file its own complaint (Polovoy Decl. ¶ 7), and, as the Second Circuit noted, any limitations issues are the result of its "counsel's refusal or failure to file a new complaint."  (Id. Ex. G at *2.)

fraudulent." <u>Stevelman v. Alias Research Inc.</u>, 174 F.3d 79, 84 (2d Cir. 1999).  General,

conclusory, or speculative allegations, unsupported by specific facts, are legally insufficient.  <u>See</u>

<u>Rombach v. Chang</u>, 355 F.3d 164, 176 (2d Cir. 2004).

      The PSLRA requires that, where an allegation regarding a misstatement or

omission is based on information and belief, "the complaint shall state with particularity all facts

on which that belief is formed."  15 U.S.C. § 78u-4(b)(1).  In order to meet this standard, the

complaint "must identify sufficiently the sources upon which [plaintiffs'] beliefs are based and

those sources must have been likely to have known the relevant facts."  <u>In re Pfizer, Inc. Sec.</u>

<u>Litig.</u>, 538 F. Supp. 2d 621, 628-29 (S.D.N.Y. 2008) (quotation omitted).  In deciding the

motion, the Court may consider "documents incorporated into the complaint by reference, and

matters of which a court may take judicial notice."  <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>,

127 S. Ct. 2499, 2509 (2007).

**A.**      **<u>Plaintiff Fails To Plead A Material Misstatement With Particularity</u>**

      Plaintiff alleges repeatedly throughout the section of the Complaint entitled

"Defendants' False and Misleading Statements During the Class Period" that "Defendants knew,

or recklessly disregarded, that the statements from the [quarterly report, annual report, or

prospectus] . . . were materially false and misleading because of Fairfax's use of finite

reinsurance, which did not involve a sufficient transfer of risk and overstated" the Company's

reported assets, shareholders' equity, revenue, and net income.  (Compl. ¶¶ 227, 248, 251, 258,

263, 270, 272, 274, 280, 297, 313, 315, 317, 328, 331, 340, 350, 366, 368, 372, 376, 378, 381,

388, 403, 406, 411, 413, 416, 422, 426, 428, 433, 436, 438, 440.)  In support, plaintiff asserts

that "Fairfax's restatement admits that the Company improperly accounted for these contracts."

(<u>Id.</u> ¶¶ 9, 106, 108, 112.)  But plaintiff's own Complaint contradicts this allegation.  (<u>Id.</u> ¶ 113.)

According to the restatement, Fairfax identified two reinsurance contracts that did not have sufficient risk transfer to support reinsurance accounting.  (Id.)  The restatement of one of those reinsurance contracts had no impact on Fairfax's financial statements during the Class Period and the restatement of the second contract had the effect of increasing Fairfax's net earnings and decreasing a net loss during the Class Period.  (Id.)  Thus, the grand scheme that plaintiff has concocted regarding finite reinsurance actually resulted in Fairfax ***underreporting*** its net earnings during the Class Period.  Because plaintiff does not (and cannot) allege a material misstatement regarding finite reinsurance, its Section 10(b) claim should be summarily dismissed.  See Goplen v. 51job, Inc., 453 F. Supp. 2d 759, 769 (S.D.N.Y. 2006) (granting the motion to dismiss, in part, because the alleged downturn alleged by the plaintiff did not exist).

**B.**      **Plaintiff Fails To Plead Loss Causation**

There is a second, independent reason to dismiss plaintiff's Section 10(b) claim – namely, plaintiff's failure to plead loss causation.  Loss causation is the "causal connection" between a plaintiff's economic loss and the defendant's misrepresentation.  See Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005).  In order to establish the causal connection, a plaintiff must plead plausible facts that demonstrate that the plaintiff's loss was caused by (i) the materialization of a concealed risk, or (ii) a disclosure correcting the subject of a prior alleged misstatement.  See Lentell v. Merrill Lynch & Co., 396 F.3d 161, 175 (2d Cir. 2005).

Here, plaintiff purports to plead loss causation through corrective disclosures. (Compl. ¶¶ 549-64.)  In order to do so, however, the corrective disclosures must "reveal[] the truth with respect to the specific misrepresentations alleged."  In re Flag Telecom. Holdings, Ltd. Sec. Litig., 574 F.3d 29, 41 (2d Cir. 2009); see also Lentell, 396 F.3d at 175 & n.4 (stating that information cannot qualify as a corrective disclosure unless it reveals the truth about "the subject" of the alleged misstatement).  Plaintiff cannot meet this standard with regard to any of

its alleged "partial" corrective disclosures on June 24, 2005, September 7, 2005, October 10, 2005, October 11, 2005 and February 10, 2006, or with regard to its primary corrective disclosure at the end of the Class Period on March 22, 2006.

        **1.**        **June 24, 2005 and September 7, 2005 Press Releases**

        Plaintiff contends that Fairfax "partially corrected" its alleged misstatements regarding accounting for finite reinsurance when, on June 24, 2005 and September 7, 2005, Fairfax announced that it and one of its subsidiaries had received a subpoena from the SEC requesting documents regarding finite reinsurance.  (Compl. ¶¶ 553, 554; Polovoy Decl. Exs. I, J.)  These press releases, however, do not establish the requisite "causal connection" between plaintiff's economic loss and defendants' alleged misrepresentation.

        First, the June 24, 2005 and September 7, 2005 press releases do not "reveal[] the truth with respect to the specific misrepresentations alleged."  In re Flag, 574 F.3d at 41.  Plaintiff alleges that Fairfax made material misstatements in its financial statements by improperly accounting for finite reinsurance contracts.  The press releases, however, do not in any way "reveal the truth" about Fairfax's accounting for finite reinsurance or confirm that Fairfax made a misrepresentation about finite reinsurance.  Even on a motion to dismiss, where the factual allegations are taken as true, the most that can be attributed to the press releases is that the SEC requested documents from Fairfax regarding finite reinsurance.  It is simply unreasonable to interpret the press releases as "revealing the truth" about fraud.

        This is particularly true where, as here, the subpoenas were part of an industry-wide inquiry involving over 50 insurance companies.  (Polovoy Decl. ¶ 14.)  Given the broad scope of the inquiry, it is not clear from the subpoenas whether the SEC was even investigating Fairfax or whether the SEC was simply requesting documents from Fairfax as part of its investigation of another company with which Fairfax entered into a finite contract.  The

subpoenas themselves reinforce this point.  The subpoenas are entitled "Certain Loss Mitigation

Insurance Products (NY-6749)" and explicitly state that the SEC is conducting a "fact-finding

inquiry" and that "[t]he investigation and the subpoena do not mean that we have concluded that

Fairfax or anyone else has broken the law."  (Polovoy Decl. Ex. K.)  To the extent that there was

any question that the subpoenas did not "reveal the truth" about any alleged fraud at Fairfax, the

SEC sent Fairfax a letter in June 2009, which stated that the investigation had been completed

and that it was closing the inquiry without taking any action.  (Compl. ¶ 220.)  The June 24, 2005

and September 7, 2005 press releases were not corrective disclosures because they did not

disclose, in any way, that Fairfax fraudulently accounted for its finite reinsurance contracts.  See

In re Maxim Integrated Prods., Inc. Sec. Litig., 639 F. Supp. 2d 1038, 1046-47 (N.D. Cal. 2009)

(granting motion to dismiss for lack of loss causation because announcements regarding an SEC

inquiry, the receipt of a subpoena from the U.S. Attorney's office, and formation of a special

committee by its board of directors are not corrective disclosures because they "do not reveal the

alleged fraud"); In re Hansen Natural Corp. Sec. Litig., 527 F. Supp. 2d 1142, 1162 (C.D. Cal.

2007) (granting motion to dismiss for lack of loss causation because "the mere existence of [an]

investigation cannot support any inferences of wrongdoing or fraudulent scienter on the part of [a]

company or its senior management")(citation omitted); In re Avista Corp. Sec. Litig., 415 F.

Supp. 2d 1214, 1221 (E.D. Wash. 2005) (stating that "the announcement by a regulatory agency

that it intends to investigate is insufficient, on its own, to plead loss causation").

Second, the June 24, 2005 and September 7, 2005 press releases did not cause

plaintiff's alleged economic loss.  "Since Dura, courts have held as a matter of law that a

purchaser suffers no economic loss if he holds stock whose post-disclosure price has risen above

the purchase price – even if that price had initially fallen after the corrective disclosure was

made."  In re China Ne. Petrol. Holdings Ltd. Sec. Litig., 2011 U.S. Dist. LEXIS 117711, at *2-3

(S.D.N.Y. Oct. 6, 2011).  Here, plaintiff purchased 1,800 shares of Fairfax's stock on July 2,

2004 at $169.88 per share, and 500 shares of Fairfax's stock on September 9, 2004 at $131.58

per share for an average purchase price of $161.55.  (Polovoy Decl. Ex. A (Schedule A to

Plumbers Fund's PSLRA certification).)  In the weeks following the alleged June 24, 2005 and

September 7, 2005 "corrective" disclosures, plaintiff could have sold its shares at a profit

because Fairfax's stock regularly traded above $170 per share.  (Polovoy Decl. Ex. L.)  Where,

as here, "plaintiff[] foregoes a chance to sell at a profit following [an alleged] corrective

disclosure, [he] cannot logically ascribe a later loss to devaluation caused by the disclosure."  In

re China North East Petroleum Holdings, Ltd. Sec. Litig., 2011 U.S. Dist. LEXIS 117711, at *6;

see also Ross v. Walton, 668 F. Supp. 2d 32, 43 (D.D.C. 2009) (granting motion to dismiss for

lack of economic loss because stock returned to pre-disclosure prices and could have been sold at

a profit); In re Estee Lauder Cos. Sec. Litig., 2007 U.S. Dist. LEXIS 38491, at *4-6 (S.D.N.Y.

May 21, 2007) (same); In re Glaxo Smithkline PLC Sec. Litig., 2006 U.S. Dist. LEXIS 73893, at

*39-44 (S.D.N.Y. Oct. 6, 2006) (same); Malin v. XL Capital Ltd., 2005 U.S. Dist. LEXIS 27089,

at *12-14 (D. Conn. Sept. 1, 2005) (same).

## 2.      October 10, 2005 and October 11, 2005 Press Releases

Plaintiff next contends that Fairfax "partially corrected" its alleged misstatements

regarding accounting for finite reinsurance when, on October 10, 2005 and October 11, 2005,

Fairfax issued press releases indicating that it had not received a subpoena from the U.S.

Attorney's Office ("USAO") and it had not been advised that it was a target of the USAO's

investigation, but that it understood that the USAO would review the information that Fairfax

provided to the SEC.  (Compl. ¶¶ 555-56; Polovoy Decl. Ex. M.)  The statement that Fairfax had

not received a subpoena from the USAO and that it had not been advised that it was a target

cannot be a corrective disclosure because it does not in any way "correct" any alleged misstatement.  In addition, the statement that the USAO intended to review the documents the SEC collected cannot be a corrective disclosure for the same reason that the June 24 and September 7 press releases were not corrective disclosures – namely, it does not "reveal[] the truth with respect to the specific misrepresentations alleged."  See In re Flag, 574 F.3d at 41. Instead, the statement simply reiterates that Fairfax was caught up in an industry-wide investigation and that the USAO wanted to review some of the documents Fairfax produced to the SEC.  There is no indication from the USAO that Fairfax had committed fraud.  And, in fact, the SEC subsequently closed its inquiry and no authority has asserted any allegations or claims. Because these press releases do not in any way disclose that Fairfax fraudulently accounted for its reinsurance contracts, plaintiff cannot establish loss causation based on these press releases. See In re Maxim, 639 F. Supp. 2d at 1046-47 (stating that receipt of a subpoena from the U.S. Attorney's Office was not corrective disclosure because it "do[es] not reveal the alleged fraud").

### 3.    February 10, 2006 Conference Call

Plaintiff also alleges that Fairfax partially corrected its misrepresentations regarding finite reinsurance when, on a February 10, 2006 conference call with investors, Fairfax's CEO stated that the company had done "a complete review of all of our companies, all our contracts, and across Fairfax and its subsidiaries . . . [and] the OdysseyRe restatement were [sic] the only ones that did come up."  (Compl. ¶¶ 557, 559; Polovoy Decl. Ex. N at p. 38.)  It simply is not logical to interpret that statement as a disclosure of fraud.  Fairfax's CEO told the market that the company conducted an internal review and that it did not find any problems with its finite reinsurance contracts, except for the contracts that its subsidiary had already disclosed to the market.  This statement is not a disclosure of fraud – it is a refutation of fraud.  Because

this statement does not, in any way, disclose that Fairfax fraudulently accounted for its finite reinsurance contracts, plaintiff cannot establish loss causation based on this statement.

Furthermore, plaintiff's allegation that during the February 10, 2006 conference call "Defendants' . . . partially disclosed that the Company was facing a liquidity crisis" is belied by the transcript of that call.  (Compl. ¶ 558.)  What Mr. Watsa actually said was "[o]ur financial position is very sound.  Our *liquidity* is very sound."  (Polovoy Decl. Ex. N at p. 44.) (emphasis added.)  Because plaintiff's allegation is belied by the language of the disclosure on which they rely, plaintiff cannot use this allegation to plead loss causation.  See San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc., 75 F.3d 801, 808-09 (2d Cir. 1996) (court need not accept factual allegations that are belied by documents on which plaintiff relies in bringing suit).

### 4.      March 22, 2006 Press Release

Finally, plaintiff alleges that a press release entitled "Subpoena Update" at the end of the Class Period was a corrective disclosure because it revealed to the market Fairfax's allegedly fraudulent accounting for finite reinsurance.  (Id. ¶¶ 185-94, 559-63; Polovoy Decl. Ex. O.)  The March 22, 2006 press release, however, cannot establish loss causation because, according to the certification it filed with the Complaint, plaintiff sold all of its Fairfax stock on February 10, 2006, which is over a month *before* Fairfax issued the March 22, 2006 press release.  (Id. Ex. A (Schedule A to Plumbers Fund's PSLRA certification).)  It is well established, after Dura, that a plaintiff who sells his shares before the truth is revealed to the market cannot, as a matter of law, plead loss causation based on that disclosure.  See Dura, 544 U.S. at 342 (stating that a purchaser who sells his shares before the fraud is revealed cannot establish loss causation because "the misrepresentation will not have led to any loss"); see also In re Flag, 574 F.3d at 37, 41 (holding that in-and-out traders (i.e., those shareholders who sold

their shares before the corrective disclosure) cannot establish loss causation).[8]  Because plaintiff

sold all of its Fairfax stock before March 22, 2006, plaintiff's alleged losses could not have been

caused by the March 22, 2006 press release, and plaintiff cannot, as a matter of law, plead loss

causation based on that alleged corrective disclosure.

   In any event, none of the disclosures in the March 22 press release revealed to the

market any wrongfully concealed information.  All these disclosures did was discuss issues

surrounding the SEC's investigation of Fairfax and others, but none of them functioned as a

corrective disclosure, because they did not "correct" any alleged misstatements.  The March 22,

2006 press release confirmed information contained in Fairfax's press releases issued on June 24,

2005, September 7, 2005, October 10, 2005, and October 11, 2005, as well as its February 10,

2006 conference call.  As a matter of law, these confirmations could not have caused a change in

Fairfax's stock price, and, therefore, they are not corrective disclosures and cannot be used to

plead loss causation.

   As the preceding discussion makes clear, plaintiff cannot plead loss causation,

and its Section 10(b) claim must therefore be dismissed.

  **C.**  **Plaintiff Fails To Plead Scienter**

   There is a third, independent reason to dismiss plaintiff's Section 10(b) claim –

namely, plaintiff's failure to plead fraudulent intent.  The PSLRA requires that a plaintiff "state

with particularity facts giving rise to a strong inference that the defendant acted with the required

state of mind."  15 U.S.C. § 78u-4(b)(2).  To qualify as "strong" within the meaning of the

---

[8]  See also In re CornerStone Propane Partners, L.P. Sec. Litig., 2006 U.S. Dist. LEXIS 25819, at *26-28 (N.D. Cal. May 3, 2006) ("under Dura there can be no loss causation for plaintiffs who purchased and sold stock . . . prior to [the corrective] disclosure"); In re Sawtek, Inc. Sec. Litig., 2005 U.S. Dist. LEXIS 39223, at *41-42 (M.D. Fla. Oct. 6, 2005) (proposed class was overinclusive because it included individuals who sold their stock before the truth was revealed to the market and thus could not have suffered losses due to the alleged fraud); In re Compuware Sec. Litig., 386 F. Supp. 2d 913, 918 (E.D. Mich. 2005) (plaintiffs could not plead loss causation "because all stock had been sold before the allegedly true facts became known").

PSLRA, "an inference of scienter must be more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2504-05 (2007). To overcome this demanding hurdle, a plaintiff must allege facts to show either "(1) that defendants had the motive and opportunity to commit fraud, or (2) strong circumstantial evidence of conscious misbehavior or recklessness." ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 198 (2d Cir. 2009). If the plaintiffs satisfy one of these two tests, the court must then evaluate whether the inference drawn from the plaintiff's facts is at least as compelling as any other competing inference. See Glaser v. The9, Ltd., 772 F. Supp. 2d 573, 591 (S.D.N.Y. 2011). Plaintiff's scienter allegations do not come close to meeting these demanding requirements.

### 1.      Plaintiff's Motive Allegations Do Not Establish Scienter

Plaintiff's Complaint is completely devoid of any allegations of motive, and what facts do exist are "wholly inconsistent" with any intent to defraud. To satisfy "motive and opportunity," a plaintiff must allege that the defendants "benefitted in some concrete and personal way from the purported fraud." ECA, 553 F.3d at 198 (citing Novak v. Kasaks, 216 F.3d 300, 307-308 (2d Cir. 2000)). Typically, a plaintiff attempts to show motive by alleging that a corporate insider made "a misrepresentation in order to sell their own shares at a profit." In re Citigroup Inc. Sec. Litig., 753 F. Supp. 2d 206, 233 (S.D.N.Y. 2010) (citing ECA, 553 F.3d at 198); see also Russo v. Bruce, 777 F. Supp. 2d 505, 518 (S.D.N.Y. 2011) (stating that the failure to allege stock sales "fatally undermines" motive); In re Gildan Activewear, Inc. Sec. Litig., 636 F. Supp. 2d 261, 271-72 (S.D.N.Y. 2009) (ruling that the absence of insider trades "undercuts any finding of the requisite strong inference of scienter").

Here, the Officer Defendants not only did not sell any Fairfax securities during the putative Class Period, but they actually **_purchased_** Fairfax stock during the Class Period (Messrs. Watsa and Ambridge on a regular basis).  (Polovoy Decl. ¶ 3 and Ex. B.)[9]  It is "well settled that . . . the purchase of additional company shares during the class period [] is inconsistent with an intent to commit securities fraud."  In re Regeneron Pharm., Inc. Sec. Litig., 2005 U.S. Dist. LEXIS 1350, at *63-64 (S.D.N.Y. Feb. 1, 2005) (citing cases); see also Plumbers & Pipefitters Local Union 719 Pension Fund v. Zimmer Holdings, Inc., 673 F. Supp. 2d 718, 749 (S.D. Ind. 2009) (ruling that the purchase of additional shares during the class period "negates any inference of scienter"); In re First Union Corp. Sec. Litig., 128 F. Supp. 2d 871, 889 (W.D.N.C. 2001) (stating that an increase in defendant's net holdings of company stock during class period is "wholly inconsistent" with scienter).  The complete absence of any motive and opportunity – that is, any "concrete benefit" that could be realized by any of the Officer Defendants – vitiates an inference of willful participation in fraudulent activity.

### 2. Plaintiff Fails To Allege Any Facts Constituting Strong Circumstantial Evidence Of Conscious Misbehavior Or Recklessness

Where a complaint fails to allege motive, "the strength of the circumstantial allegations" of conscious misbehavior or recklessness "must be correspondingly greater . . . ."  Campo v. Sears Holdings Corp., 2010 U.S. App. LEXIS 7043, at *10 (2d Cir. Apr. 6, 2010) (quoting ECA, 553 F.3d at 198-99); Kalnit v. Eichler, 264 F.3d 131, 141 (2d Cir. 2001).  To plead conscious misbehavior or recklessness, a plaintiff "must _specifically identify_ the reports or statements that are contradictory to the statements made" or must "provide specific instances in which Defendants received information that was contrary to their public declarations."  Glaser,

---

[9]     The Court may take judicial notice of the official filings with the Canadian Securities Administrators that demonstrate stock purchases by Messrs. Watsa, Ambridge, and Taylor.  Cf. Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir. 1991) (court may take judicial notice of public disclosure documents filed with SEC).

772 F. Supp. 2d at 588 (quoting Plumbers & Steamfitters Local 773 Pension Fund v. Canadian

Imperial Bank of Commerce, 694 F. Supp. 2d 287, 299 (S.D.N.Y. 2010) (emphasis in original)).

Plaintiff's allegations do not meet this exacting standard.

a.    **Confidential Witnesses**

Plaintiff primarily relies on the statements of confidential witnesses to support its

allegations that the Officer Defendants "knew or recklessly disregarded that the Company's (and

the Company's subsidiaries') use of finite reinsurance contracts that did not transfer risk caused

Fairfax's financial statements to be materially false and misleading . . . ." (Compl. ¶¶ 452, 454-

55, 459-60.)  Plaintiff's confidential witness statements, however, are patently insufficient to

establish conscious misbehavior or recklessness.

After Tellabs, allegations from anonymous sources should be "discounted"

because "it is hard to see how information from anonymous sources could be deemed

'compelling' or how [the Court] could take account of plausible opposing inferences.  Perhaps

these confidential sources have axes to grind.  Perhaps they are lying.  Perhaps they don't even

exist."  In re MRU Holdings Sec. Litig., 769 F. Supp. 2d 500, 516 (S.D.N.Y. 2011) (quoting

Higginbotham v. Baxter Int'l, Inc., 495 F.3d 753, 756-57 (7th Cir. 2007)).  The Second Circuit

recently explained that the anonymity of the sources "frustrates the requirement, announced in

Tellabs, that a court weigh competing inferences to determine whether a complaint gives rise to

an inference of scienter that is 'cogent and at least as compelling as any opposing inference of

nonfraudulent intent.'"  Campo, 2010 U.S. App. LEXIS 7043, at *8 n.4 (quoting Tellabs, 127 S.

Ct. at 2502).  In addition, the use of anonymous sources serves no purpose other than to "obstruct

the judiciary's ability to implement the PSLRA" at the motion to dismiss stage since a plaintiff is

required under the Federal Rules to disclose the names of confidentiality witnesses during

discovery.  See Baxter, 495 F.3d at 757.  Because the use of anonymous sources "obstructs the

29

judiciary's ability to implement the PSLRA" and "frustrates" the analysis required by Tellabs, the Court should "discount" allegations from the plaintiff's confidential witnesses.  See In re MRU Holdings Sec. Litig., 769 F. Supp. 2d at 515-18 (discounting the allegations from anonymous sources and granting the motion to dismiss for failure to plead scienter).

Even if the Court does not entirely discount the confidential witness statements, plaintiff still cannot plead scienter because its confidential witnesses do not allege any facts that give rise to a strong inference that the Officer Defendants fraudulently accounted for finite reinsurance.  In fact, only one of the nine confidential witnesses even discusses finite reinsurance, and his allegations are woefully inadequate.  "CW9," who is said to be a "senior executive" in the "audit department" at OdysseyRe, claims that (i) "Fairfax and its subsidiaries never even developed any protocols to test risk transfer in Fairfax's finite reinsurance transactions," (ii) OdysseyRe was motivated to use finite reinsurance because it was profitable, and (iii) finite reinsurance contracts were "handled 'solely at the most senior levels'" of OdysseyRe.  (Id. ¶¶ 110, 459.)  None of these allegations gives rise to any inference of fraudulent intent, let alone a strong inference of fraudulent intent for the following reasons.

As to allegation (i) above, plaintiff provides no basis for CW9's purported knowledge that "Fairfax and its subsidiaries never even developed any protocols to test risk transfer in Fairfax's finite reinsurance transactions."  (Compl. ¶ 110.)  In order to establish the reliability of an anonymous source, a plaintiff must identify the source with "sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged."  See Novak, 216 F.3d at 313-314.  Plaintiff does not identify CW9's background or the basis for his knowledge with sufficient particularity to establish his reliability.  Plaintiff vaguely asserts that CW9 worked in OdysseyRe's "audit department" but

does not provide any details about whether he has an accounting background, whether he has any knowledge about risk transfer testing or accounting for finite reinsurance, whether he ever had any interaction with the Officer Defendants or any of the actuaries who actually conducted the risk transfer analysis at Fairfax, or whether, even if allegation (i) is correct, Fairfax in fact failed to test risk transfer on its finite reinsurance contracts.  In addition, CW9 worked at OdysseyRe, not Fairfax, and therefore there is no allegation (or basis to believe) that CW9 would know anything about risk transfer "protocols" at Fairfax.  The lack of specificity regarding the basis for CW9's knowledge is "fatal" to his allegations.  See Glaser, 772 F. Supp. 2d at 595 (ruling that the lack of detailed facts regarding the CW's job duties or his contact with the individual defendant was "fatal" to the CW's allegations); Local No. 38 IBEW Pension Fund v. Am. Express Co., 724 F. Supp. 2d 447, 460-61 (S.D.N.Y. 2010) (ruling that allegations based on confidential witnesses were insufficient where plaintiff did not allege that the CWs had contact with the individual defendants and did not provide specific facts about what "contradictory information the Individual Defendants received and when they received it"); In re Am. Express Co. Sec. Litig., 2008 U.S. Dist. LEXIS 74372, at *21-22 (S.D.N.Y. Sept. 26, 2008) (ruling that allegations based on confidential witnesses were insufficient where plaintiff "failed to alleged facts showing that the confidential sources [several senior executives] had any contact with the Individual Defendants or would have knowledge of what they knew or should have known during the Class Period").

As to allegation (ii) above, CW9's allegation that OdysseyRe was motivated to use finite reinsurance because of its "high margins" also does not give rise to a strong inference of scienter.  (Compl. ¶ 459.)  It is well established that "the desire to maximize the corporation's profits does not strengthen the inference of intent to defraud because . . . far from defrauding the

shareholders [it] actually benefits the shareholders." See ECA, 553 F.3d at 200; see also Rombach v. Chang, 355 F.3d 164, 177 (2d Cir. 2004) (ruling that even actions taken to "maintain the appearance of corporate profitability or of the success of an investment" do not give rise to a strong inference of scienter).

As to allegation (iii) above, CW9's vague allegation that finite reinsurance contracts were "handled solely at the most senior levels of the Company" in no way supports a strong inference of scienter.  (Compl. ¶ 459.)  It is well established that fraudulent intent cannot be pled through allegations that a defendant held a management position and therefore must have known about a fraud.  See Plumbers & Steamfitters Local 773, 694 F. Supp. 2d at 300 (granting motion to dismiss and rejecting plaintiffs' argument that defendant should have known his statements were false because of his position as Chairman and CEO of the company); In re Gildan Activewear, Inc. Sec. Litig., 636 F. Supp. 2d 261, 273 (S.D.N.Y. 2009) (granting motion to dismiss and stating that "general allegations that, by virtue of their senior positions . . ., the [defendants] necessarily had access to nonpublic information, are insufficient to show recklessness"); Goplen v. 51job, Inc., 453 F. Supp. 2d 759, 773 (S.D.N.Y. 2006) (granting motion to dismiss and holding that the plaintiff's general allegations that high-level executives had access to adverse financial information was insufficient to plead scienter).

The remaining confidential witnesses (CW1 through CW8) do not make any allegations related to finite reinsurance, and therefore, are irrelevant to this lawsuit.  In general, CW1 through CW8, who primarily worked at OdysseyRe and not Fairfax, make vague allegations that various subsidiaries were "not organized" or lacked "internal controls."  (Compl. ¶ 460.)  These vague allegations do not come close to creating a strong inference of conscious misbehavior or recklessness.

For example, CW5, who purportedly spent eight months as an outside consultant at OdysseyRe, alleged that she created a report regarding OdysseyRe's internal controls that resulted in a "fail" and that it was her responsibility to make sure that every department head received a copy of the report.  (Compl. ¶ 127.)  Absent from these vague allegations are any facts indicating what aspect of OdysseyRe's operations she was auditing, what the basis of the so-called "fail" was, why the Officer Defendants would have received a copy of her report if it was prepared for department heads at OdysseyRe (not Fairfax), and who the so-called "department head[s]" were who allegedly received her report.  (Compl. ¶¶ 127-32, 467.)  Plaintiff's general allegations about a vaguely described "report" from an anonymous source who was a short-term consultant at a subsidiary of Fairfax are insufficient to create any inference of scienter, let alone a "strong inference."  See City of Brockton Ret. Sys. v. Shaw Grp., Inc., 540 F. Supp. 2d 464, 473 (S.D.N.Y. 2008) (stating that "[w]hile various confidential informants assert that knowledge of weakness in the accounting department was 'widespread' at [the company], not a single informant offers any information from which one could infer that either of the individual defendants knew or had reason to know anything about the mistaken application of" the accounting rules); In re Sierra Wireless, Inc. Sec. Litig., 482 F. Supp. 2d 365, 373 (S.D.N.Y. 2007) (stating that plaintiff must "specify the [allegedly contradictory] internal reports, who prepared them and when, how firm the numbers were or which company officers reviewed them") (internal citations omitted); In re Federated Dep't Stores, Inc. Sec. Litig., 2005 WL 696894, at *4-5 (S.D.N.Y. Mar. 25, 2005) (holding that in order to adequately plead conscious misbehavior or recklessness based on a report allegedly provided to the defendant, the complaint must describe specific information contained in the report that should have alerted defendant to the particular accounting problem alleged in the complaint).

### b.    Restatement

In addition to the confidential witnesses, plaintiff attempts to plead scienter by virtue of the fact that Fairfax restated certain financial statements after the end of the Class Period.  But the restatement adds nothing to plaintiff's scienter allegations because, as noted above, the restatement only impacted two finite reinsurance contracts and the changed accounting for those contracts had no impact on shareholders' equity and resulted in an increase in net earnings or a decrease in net loss during the Class Period.  (Compl. ¶ 113; Polovoy Decl. Ex. P at 13-14 (Part 2(i) and (ii)).)  It defies logic to allege that an accounting error that resulted in an ***understatement*** of net earnings could possibly support a strong inference of scienter.

### 3.    The Inference Drawn From Plaintiff's Allegations Is Not As Compelling As Other Rational Inferences

Even if plaintiff's allegations satisfied either the "motive and opportunity" requirement or the "conscious misbehavior or recklessness" requirement – and they do not – plaintiff's Section 10(b) claim should still be dismissed because plaintiff cannot satisfy the "comparative analysis" requirement articulated in <u>Tellabs</u>, which requires that "the inference drawn from the facts is at least as compelling as any other rational inference."  <u>Glaser</u>, 772 F. Supp. 2d at 591.

Plaintiff alleges that Fairfax fraudulently accounted for finite reinsurance contracts in order to conceal liquidity problems and that the fraud was revealed through the Company's restatement and the receipt of a subpoena from the SEC.  (Compl. ¶¶ 1-2.)  Contrary to plaintiff's assertions, a much more rational interpretation of the facts is that:

- The Officer Defendants had no motive to commit fraud.  There are no allegations that they sold Fairfax stock.  In fact, they ***purchased*** substantial amounts of Fairfax stock during the Class Period.  These purchases strongly support the opposing inference that they were not aware of any material misstatements regarding the accounting for finite reinsurance.  (Polovoy Decl. ¶ 3, Ex. B.)

34

- The restatement resulted in Fairfax changing the accounting for only two reinsurance contracts.  (Compl. ¶ 113.)  More importantly, as the restatement made plain, the change in accounting treatment of those contracts had ***no*** impact on shareholders' equity and actually resulted in an ***increase*** in net earnings or ***decrease*** in net loss during the Class Period.  (Polovoy Decl. Ex. P at 13-14 (Part 2(i) and (ii)).)  The lack of negative impact supports the inference that any errors with respect to the accounting for finite reinsurance were not made with an intent to defraud.

- On June 25, 2009, the SEC informed Fairfax that it was closing its investigation without taking any action against Fairfax.  (Compl. ¶ 489.)  The subpoena that Fairfax received was part of an industry-wide investigation in which over 50 insurance companies received subpoenas.  (Polovoy Decl. ¶ 14.)  As part of the industry-wide investigation, the SEC filed charges against certain insurance companies and their executives.  The SEC did not take any action against Fairfax.

- Fairfax's stock price increased from $120 on August 31, 2006 (the day that Fairfax issued its restatement) to over $400 on the day this brief was served.  (Polovoy Decl. Ex. Q.)  The significant increase in Fairfax's stock price following the restatement supports the inference that there was no intent to defraud Fairfax's shareholders.

Because the inference urged by plaintiff is not cogent, and is not at least as compelling as the inference of non-fraudulent intent urged by Fairfax, plaintiff's Section 10(b) claim should be dismissed.  See Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc., 531 F.3d 190, 196 (2d Cir. 2008) (reversing the denial of the motion to dismiss because the plaintiffs' inference was not as compelling as the competing inference offered by the defendants); Glaser, 772 F. Supp. 2d at 598-99 (granting the motion to dismiss, in part, because the plaintiffs' inference was not as compelling as competing inferences); Local No. 38 IBEW Pension Fund v. Am. Express Co., 724 F. Supp. 2d 447, 463-64 (S.D.N.Y. 2010) (same).[10]

---

[10]     Plaintiff also includes a claim pursuant to Section 20(a) of the Exchange Act against Fairfax and the Officer Defendants.  (Count II.)  Because the Complaint fails to state a primary violation under Section 10(b), the Section 20(a) claim must be dismissed as well.  See Glaser, 772 F. Supp. 2d at 599; Local No. 38 IBEW Pension Fund, 724 F. Supp. 2d at 464.  The Section 20(a) claim also fails because the Complaint does not allege facts that would demonstrate (i) that the controlling person was in some meaningful sense a culpable participant in the primary violation, or (ii) that the Officer Defendants, particularly Mr. Ambridge and Mr. Taylor, had actual control over the alleged primary violators.

**III.     PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 11 OF THE SECURITIES ACT OF 1933**

Even if the Complaint were not time barred (as established in Point I above), plaintiff's Section 11 claims should still be dismissed because (i) plaintiff lacks standing to assert these claims, and (ii) plaintiff fails to plead fraud with particularity as required by Rule 9(b).

Section 11 of the Securities Act provides in pertinent part:

> In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any person acquiring such security (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may . . . sue [enumerated persons and entities].

15 U.S.C. § 77k(a).  Plaintiff alleges that the Securities Act Defendants intentionally made material misstatements in the registration statements filed in connection with offerings of Fairfax's common stock in October 2004 and September 2005 (the "Offerings").  Because plaintiffs do not – and cannot – allege that they purchased securities "pursuant to or traceable to" the Offerings, and because there are no well-pleaded allegations of fraud on the part of the Securities Act Defendants, the Section 11 claims should be dismissed.

### A.      Plaintiff Lacks Standing To Assert Section 11 Claims

To have standing to bring suit under Section 11 of the Securities Act, a plaintiff must have purchased a security issued pursuant to an allegedly defective registration statement, or be able to trace a later-purchased security back to the defective registration statement.  See DeMaria v. Andersen, 318 F.3d 170, 176 (2d Cir. 2003).  The burden of establishing that shares were purchased in or traceable to a particular public offering rests with the plaintiff.  See In re Global Crossing, Ltd. Sec. Litig., 313 F. Supp. 2d 189, 207 (S.D.N.Y. 2003) (citing Barnes v. Osofsky, 373 F.2d 269, 273 n.2 (2d Cir. 1967)).

Plaintiff does not allege anywhere in the Complaint that it purchased Fairfax's stock issued "pursuant to" the Offerings.  On that basis alone, the Court should dismiss plaintiff's Section 11 claims for lack of standing.  See In re Global Crossing, 313 F. Supp. 2d at 208 (dismissing plaintiffs' Section 11 claims for lack of standing, in part, because the plaintiffs failed to allege that they purchased shares issued pursuant to or traceable to the offering).

Plaintiff could not include such allegations because of the timing of its stock purchases.  According to the sworn certification that plaintiff filed with the Complaint, plaintiff purchased shares of Fairfax's common stock on July 2, 2004 and September 9, 2004.  (Polovoy Decl. Ex. A (Schedule A to Plumbers Fund's PSLRA Certification).)  Stock was not sold pursuant to the challenged offerings, however, until much later, on October 28, 2004 and September 28, 2005.  (Compl. ¶¶ 336, 419.)  Because plaintiff purchased Fairfax securities well *before* shares were sold pursuant to the Offerings, plaintiff could not, as a matter of law, have purchased shares of Fairfax's stock issued "pursuant to" or "traceable to" the Offerings.

Plaintiff attempts to circumvent this fatal flaw by alleging that its claims are filed "on behalf of all members of the Class who purchased or otherwise acquired securities in connection with Fairfax's" October 2004 and September 2005 offerings.  (Id. ¶¶ 592, 606.)  It is well-established, however, that, in order to satisfy the standing requirements for a Section 11 claim, "named plaintiffs in a class action 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'"  W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP, 549 F.3d 100, 106 n.5 (2d Cir. 2008) (quoting Warth v. Seldin, 422 U.S. 490, 502 (1975)).  "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been

injured." N.J. Carpenters Vacation Fund v. Royal Bank of Scotland Grp., PLC, 720 F. Supp. 2d 254, 264-65 (S.D.N.Y. 2010) (quoting Lewis v. Casey, 518 U.S. 343, 357 (1996)).  Based on these well established principles, courts in this Circuit routinely rule that a plaintiff cannot establish standing by asserting that it is bringing the claim "on behalf of" unnamed purported members of the class.  See N.J. Carpenters, 720 F. Supp. at 265-66 (granting the motion to dismiss and rejecting the plaintiff's argument that it had standing based on the alleged harm to unnamed purported class members); In re Lehman Bros. Sec. & ERISA Litig., 684 F. Supp. 2d 485, 490-91 (S.D.N.Y. 2010) (same); In re Authentidate Holding Corp. Sec. Litig., 2006 U.S. Dist. LEXIS 47971, at *19-22 (S.D.N.Y. July 14, 2006) (same); In re Global Crossing, 313 F. Supp. 2d at 207-08 (same).

Because plaintiff did not purchase Fairfax stock issued pursuant to or traceable to the Offerings, and because it cannot remedy that defect by general assertions that the Section 11 claims are brought "on behalf of" unnamed purported class members, plaintiff's Section 11 claims should be dismissed for lack of standing.

**B.     Plaintiff's Section 11 Claims Do Not Meet The Heightened Pleading Requirements Of Rule 9(b)**

Even if plaintiff had standing to assert Section 11 claims, its Section 11 claims should be dismissed because the Complaint fails to plead fraud with the requisite particularity. Under settled law, Rule 9(b) of the Federal Rules of Civil Procedure applies to Section 11 claims that sound in fraud.  Rombach, 355 F.3d at 164.  In determining whether a Section 11 claim sounds in fraud, courts typically look at the structure of the complaint.  If a plaintiff divides the complaint into two sections – a Securities Act section based on negligence and an Exchange Act section based on fraud – courts typically find that Rule 9(b) does not apply to the Securities Act claims.  See In re Wachovia Equity Sec. Litig., 753 F. Supp. 2d 326, 374-75 (S.D.N.Y. 2011); In

re IAC/InterActiveCorp. Sec. Litig., 695 F. Supp. 2d 109, 116 (S.D.N.Y. 2010); In re Refco, Inc.

Sec. Litig., 503 F. Supp. 2d 611, 632 (S.D.N.Y. 2007).  If, however, a plaintiff fails to divide the

complaint into two distinct sections and instead combines Exchange Act allegations and

Securities Act allegations together, courts rule that Rule 9(b) applies.  See Ladmen Partners, Inc.

v. Globalstar, Inc., 2008 U.S. Dist. LEXIS 76670, at *32-38 (S.D.N.Y. Sept. 30, 2008); In re

Alstom SA Sec. Litig., 406 F. Supp. 2d 402, 410-11 (S.D.N.Y. 2005); In re Ultrafem Inc. Sec.

Litig., 91 F. Supp. 2d 678, 690-91 (S.D.N.Y. 2000).

       Here, plaintiff does not make any attempt to segregate its fraud-based allegations

from its negligence-based allegations.  Instead, plaintiff lumps all the allegations together,

making it impossible for defendants or the Court to distinguish which allegations purportedly

support which claims.  Plaintiff compounds this problem by incorporating by reference "each

and every" allegation in the entire Complaint into its Section 11 claims.  (Compl. ¶¶ 590-91,

604-05.)  Because plaintiff fails to segregate its negligence allegations from its fraud allegations,

Rule 9(b) should apply to the Section 11 claims.  See In re Alstom, 406 F. Supp. 2d at 410

(applying Rule 9(b) and refusing the plaintiff's request to "disaggregate [the complaint] into

discrete compartments and then sanitize the parts they previously heavily tainted with charges of

fraud"); In re Ultrafem, 91 F. Supp. 2d at 690-91 (applying Rule 9(b) because "plaintiff [made]

little, if any, effort to differentiate their asserted negligence claims from the fraud claims which

permeate the Complaint").

       Moreover, in the subsection of the Complaint that discusses the Offerings,

plaintiff asserts that the Defendants "knew, or recklessly disregarded, that the statements

incorporated into the October 28, 2004 [and September 28, 2005] Supplemental Prospectus[es]

. . . were materially false and misleading . . . ."  (Compl. ¶¶ 339-40, 421-22.)  This is not a

negligence allegation; it is a fraud allegation, and therefore, Rule 9(b) should apply.  See

Ladmen, 2008 U.S. Dist. LEXIS 76670, at *34-36 (applying Rule 9(b) because allegations that

the defendants "knew" of the misconduct "are classic allegations of fraud and must be plead with

particularity").

            Plaintiff attempts to avoid the application of Rule 9(b) with boilerplate

disclaimers that disavow the incorporation of fraud allegations into the Section 11 claims.

(Compl. ¶¶ 590-91, 604-05.)  It is well established, however, that boilerplate disclaimers are

insufficient to avoid the application of Rule 9(b).  See Ladmen, 2008 U.S. Dist. LEXIS 76670, at

*35 n.10 (applying Rule 9(b) and rejecting "boilerplate" language disclaiming fraud); In re

Marsh & McClennan Cos., Inc. Sec. Litig., 501 F. Supp. 2d 452, 492 (S.D.N.Y. 2006) (stating

that the plaintiff "cannot repeat and reallege each and every allegation contained in the

Complaint . . . and then attempt to disclaim those allegations in the very next paragraph")

(internal citation omitted); In re JP Morgan Chase Sec. Litig., 363 F. Supp. 2d 595, 635

(S.D.N.Y. 2005) (stating that "[p]laintiffs cannot evade the Rule 9(b) strictures by summarily

disclaiming any reliance on a theory of fraud or recklessness"); In re Alstom, 406 F. Supp. 2d at

410 (rejecting the plaintiffs' disclaimer of fraud because "[p]laintiffs cannot so facilely put the

fraud genie back in the bottle").

            The Second Circuit has noted that Rule 9(b) is designed, in part, to protect a

defendant's reputation when he or she has been accused of fraud.  See Rombach, 355 F.3d at

171.  "Allowing plaintiffs to allege fraud over nine-hundred paragraphs and then withdraw those

claims for eight paragraphs in order to state a Section 11 claim eviscerates Rule 9(b)'s mandate

to 'safeguard a defendant's reputation from improvident charges of wrongdoing.'"  In re Marsh,

501 F. Supp. 2d at 492 (quoting Rombach, 355 F.3d at 171).  The same is true here.  Plaintiff has

alleged a widespread fraud and specifically alleged that defendants "knew, or recklessly disregarded, that the statements incorporated into the October 28, 2004 [and September 28, 2005] Supplemental Prospectus[es] . . . were materially false and misleading." (Compl. ¶¶ 339-40, 421-22.)  Having made these allegations, plaintiff must plead with particularity facts – not just conclusions – that the defendants knowingly or recklessly took this action.  See also In re Marsh, 501 F. Supp. 2d at 492 (applying Rule 9(b) and stating that the plaintiffs "must adequately plead" that the Section 11 defendants "were reckless when the misleading statements [were] incorporated into" the prospectus supplement).  Plaintiff does not come close to meeting this standard.

The Complaint does not contain any well-pleaded allegations from which the Court could infer fraudulent intent on the part of Ms. Williamson or Messrs. Martin, Hartog, Griffiths, or Sweitzer regarding the October 2004 or September 2005 Offerings.  (Compl. ¶¶ 336-40, 419-22, 590-98, 604-12.)  Indeed, plaintiff barely sees fit to mention their names in the Complaint except to name them as defendants, recite their titles, and note that they (like directors and officers at all companies) signed periodic securities filings.  With respect to Messrs. Watsa and Ambridge, plaintiff's conclusory allegations of fraudulent intent do not touch on these registration statements and, as demonstrated above, similarly fail under Rule 9(b) and the PSLRA.  Because plaintiff fails to allege with particularity that the defendants named in the Section 11 claims knowingly included false and misleading statements in the registration statements for the Offerings, the Section 11 claims must be dismissed.  See Rombach, 355 F.3d

at 174-75 (dismissing the Section 11 claim because it failed to meet the pleading requirements of Rule 9(b)).[11]

## IV. PLAINTIFF'S CLAIM AGAINST ODYSSEYRE IS BARRED BECAUSE ODYSSEYRE DID NOT "MAKE" ANY OF THE CHALLENGED STATEMENTS

In addition to each of the grounds for dismissal discussed above, plaintiff's claim against OdysseyRe should be dismissed because OdysseyRe did not "make" any of the challenged statements.  Plaintiff alleges that OdysseyRe is liable under Section 10(b) for false statements it allegedly knew would be included in *Fairfax's* financial statements.  (Compl. ¶¶ 234-35, 252, 259, 264, 277, 298, 318, 332, 369, 429, 441.)  To the extent this claim could ever have been considered viable, it is foreclosed by the Supreme Court's recent decision in Janus Capital Group, Inc. v. First Derivative Traders, 131 S. Ct. 2296 (2011).

In Janus, the issue presented was whether an investment adviser (Janus Capital Management) could be held liable in a private action under Rule 10b-5 for drafting false statements that were included in an investment fund's (Janus Investment Fund) prospectus.  Id. at 2301.  The United States, which was invited to participate in the case, argued that the term "make" in Rule 10b-5 is synonymous with "create," such that a private plaintiff could sue a person or entity that participated in or contributed to the drafting of a false or misleading statement.  Id. at 2303.  The Court rejected this interpretation because a person or entity that participates in or contributes to a false statement is merely an aider and abettor and prior

---

[11]    Plaintiff also includes "control person" claims pursuant to Section 15 of the Securities Act.  (Counts IV and VI.)  Because the Complaint fails to state a primary violation under Section 11, the Section 15 "control person" claim must be dismissed as well.  See ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 207 (2d Cir. 2009); In re Philip Servs. Corp. Sec. Litig., 383 F. Supp. 2d 463, 487 (S.D.N.Y. 2004).  Like the Section 20(a) control person claims, the Complaint similarly fails to plead facts that would establish culpable participation or actual control on the part of the defendants named in the Section 15 claim.

Supreme Court precedent precludes a private right of action against aiders and abettors.  Id. at

2303-04.  The Court held that, under the federal securities laws, "the maker of a statement is the

person or entity with ultimate authority over the statement, including its content and whether and

how to communicate it."  Id. at 2302.  Without control, the Court explained, "a person or entity

can merely suggest what to say, not 'make' a statement in its own right."  Id.  Based on this

interpretation, the Court ruled that the investment adviser did not "make" any of the false

statements that the investment fund included in its prospectus because, even though the adviser

participated in and contributed to the preparation of the prospectus, it was the investment fund

that had the ultimate control over the prospectus and decided whether or not to file it.  Id. at

2305.

   Like the investment adviser in Janus, OdysseyRe may have provided information

that was included in Fairfax's financial statements, but plaintiff does not – and cannot – allege

that OdysseyRe had "ultimate control" over the filings of its parent, Fairfax, or that OdysseyRe

made the decision as to whether Fairfax would make SEC filings.  As such, OdysseyRe is not the

"maker" of the alleged misstatements and cannot be held liable under Section 10(b).

Accordingly, plaintiff's Section 10(b) claim against OdysseyRe must be dismissed.

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the Complaint with prejudice.

Dated:  New York, New York
December 16, 2011

Respectfully submitted,

SHEARMAN & STERLING LLP

By:  ___/s/ Brian H. Polovoy_____
        Brian H. Polovoy
        Jeffrey J. Resetarits

599 Lexington Avenue
New York, NY 10022-6069
Telephone: (212) 848-4000
Facsimile: (212) 848-7179

*Attorneys for Defendants Fairfax Financial
Holdings Limited, Odyssey Re Holdings
Corp., V. Prem Watsa, Trevor J. Ambridge,
Greg Taylor, M. Jane Williamson, Robbert
Hartog, Anthony F. Griffiths, Bradley P.
Martin, and Brandon Sweitzer*

AFFIDAVIT OF SERVICE

STATE OF NEW YORK      )
                       ) ss.:
COUNTY OF NEW YORK  )

ERZULIE D. COQUILLON, being duly sworn, deposes and says:

On December 16, 2011, I caused a true and correct copy of the Notice of Motion

to Dismiss, Memorandum of Law in Support of the Fairfax Defendants' Motion to Dismiss the

Class Action Complaint, and the Declaration of Brian H. Polovoy in Support of Fairfax

Defendants' Motion to Dismiss to be served by U.S. mail upon the following:

> Mario Alba, Jr.
> Samuel Howard Rudman
> Robbins Geller Rudman & Dowd LLP
> 58 South Service Road, Suite 200
> Melville, NY 11747
>
> Javier Bleichmar
> Alan Ian Ellman
> Kevin Leo Oberdorfer
> Jonathan M. Plasse
> Labaton Sucharow, LLP
> 140 Broadway
> New York, NY 10005
>
> Charles Thomas Caliendo
> Geoffrey Coyle Jarvis
> Grant & Eisenhofer P.A.
> 485 Lexington Avenue, 29th Floor
> New York, NY 10017

_____
Erzulie D. Coquillon

Sworn to before me this
20th day of December 2011

_____
Notary Public

BRYAN JANKAY
Notary Public, State of New York
No. 01JA6172051
Qualified in New York County
Commission Expires Aug. 6, 20 15