UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------  x
                                                         x
PLUMBERS, PIPEFITTERS & MES LOCAL                        x
UNION NO. 392 PENSION FUND, On Behalf of                 x
Themselves and All Others Similarly Situated,            x
                                                         x    No. 11 CV 5097 (JFK)
                         Plaintiff,                      x
                                                         x    Electronically Filed
            v.                                           x
                                                         x
FAIRFAX FINANCIAL HOLDINGS LIMITED,                      x
et al.,                                                  x
                                                         x
                         Defendants.                     x
                                                         x
-------------------------------------------------------  x
```

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
MOTION TO DISMISS THE CLASS ACTION COMPLAINT BY
PRICEWATERHOUSECOOPERS LLP, TORONTO, ONTARIO, CANADA**

Dated: April 11, 2012

Christopher Davies
Ben Brown (*pro hac vice*)
Scott M. Litvinoff
WILMER CUTLER PICKERING HALE
    AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

*Attorneys for Defendant PricewaterhouseCoopers
LLP, Toronto, Ontario, Canada*

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................................... 1

I. THE PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 10(B) OR RULE 10B-5 AGAINST PWC CANADA. ........................................................................ 2

    A. The Complaint Fails to Plead a Material Misstatement by PwC Canada. .............................. 2

    B. Plaintiff Fails to Adequately Plead Loss Causation. ............................................................. 3

    C. The Complaint Fails to Allege With Particularity Facts Supporting a "Strong Inference" That PwC Canada Acted With Intent to Defraud. .................................................................. 5

II. PLAINTIFF CANNOT SAVE ITS CLAIMS FROM EXTINGUISHMENT BY THE STATUTE OF REPOSE BY RELYING ON *AMERICAN PIPE* TOLLING. .............................. 7

III. PLAINTIFF FAILS TO STATE A CLAIM UNDER *MORRISON* AND ITS COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE. ...................................................................... 9

    A. Plaintiff has effectively conceded that its complaint fails to state a claim under *Morrison*. ... 9

    B. Plaintiff failed to avail itself of the opportunity to cure its patently defective pleading, and should not be given leave to replead. ..................................................................................... 10

CONCLUSION ................................................................................................................................... 12

## **TABLE OF AUTHORITIES**

CASES

*Albano v. Shea Homes Ltd. Partnership*, 254 P.3d 360 (Ariz.. 2011)..............................9

*American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) ............................7, 8

*In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430 (S.D.N.Y. 2005).........................................7

*In re Bradley Pharmaceuticals., Inc. Sec. Litig.*, 421 F. Supp. 2d 822 (D.N.J. 2006) ....................4

*In re Burlington Coat Factory*, 114 F.3d 1410 (3d Cir. 1997) ..........................................3

*Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101 (7th Cir. 1984)..........................................10

*Cornwell v. Credit Suisse Group*, 729 F. Supp. 2d 620 (S.D.N.Y. 2010) ........................................9

*Footbridge Ltd. Trust v. Countrywide Fin. Corp.*, 770 F. Supp. 2d 618 (S.D.N.Y. 2011)..............9

*In re Global Crossing, Ltd. Sec. Litig.*, 471 F. Supp. 2d 338 (S.D.N.Y. 2006)................................3

*Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F. Supp. 518 (S.D.N.Y. 1977)........................10

*In re Lehman Bros. Sec. & ERISA Litig.*, 800 F. Supp. 2d 477 (S.D.N.Y. 2011)............................9

*Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161 (2d Cir. 2005) ....................................3

*Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99 (2d Cir. 1999)......................................10

*Morrison v. National Australia Bank Ltd.*, 130 S. Ct. 2869 (2010)................................................9

*O'Brien v. National Property Analysts Partners*, 719 F. Supp. 222 (S.D.N.Y. 1989) ..................10

*P. Stolz Family Partnership L.P. v. Daum*, 355 F.3d 92 (2d Cir. 2004)..........................................8

*Raab v. General Physics Corp.*, 4 F.3d 286 (4th Cir. 1993)............................................................3

*Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642 (6th Cir. 2006).........11

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000)............................................................................5

*In re Royal Bank of Scotland Group PLC Sec. Litig.*, 765 F. Supp. 2d 327 (S.D.N.Y. 2011) ................................................................................................................................9

*Shaw v. Digital Equip Corp.*, 82 F.3d 1194 (1st Cir. 1996) ..........................................................3

*Stephenson v. PricewaterhouseCoopers, LLP*, 768 F. Supp. 2d 562 (S.D.N.Y. 2011) ............... 5, 6

*Stuart v. American Cyanamid Co.*, 158 F.3d 622 (2d Cir. 1998) ...................................................... 8

*In re Winstar Communications*, 2006 WL 473885 (S.D.N.Y. Feb. 27, 2006) ................................ 4

## STATUTES & RULES

Private Securities Litigation Reform Act of 1995 ............................................................................ 1

Securities Exchange Act of 1934, § 10(b) ....................................................................................... 2

101 Cong. Rec. 5131 (1955) ............................................................................................................ 8

15 U.S.C. § 77m ....................................................................................................................... 7, 8, 9

28 U.S.C. § 1658(b) ..................................................................................................................... 7, 9

28 U.S.C. § 2072(b) ......................................................................................................................... 8

Fed. R. Civ. P. 9(b) .......................................................................................................................... 1

Fed. R. Civ. P. 12(b)(6) .............................................................................................................. 1, 10

Fed. R. Civ. P. 15(a)(1)(B) ............................................................................................................. 10

Fed. Rule Civ. P. 23 ..................................................................................................................... 7, 8

## OTHER AUTHORITIES

2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2012) .......................... 10

Defendant PwC Canada respectfully submits this Reply Memorandum of Law in Further Support of its Motion to Dismiss the Class Action Complaint pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995.[1]

## PRELIMINARY STATEMENT

This is a case in which fundamentally nothing happened.  Plaintiff — having sold its stock during a brief trough in the market for defendant Fairfax's common stock caused by uncertainty arising from government investigations that ultimately went nowhere — now seeks to recover its unfortunate but legally irrelevant loss through a tale of supposed accounting skullduggery by Fairfax, purportedly facilitated by its auditor, PwC Canada.  Plaintiff cannot plead that PwC Canada actually participated in or knew about any alleged misconduct; and plaintiff ignores that Fairfax's stock price promptly rose above the highest price from the Class Period *after* Fairfax restated its financials, which was the only time Fairfax disclosed an error. *See infra*, § I.  Moreover, plaintiff's claims have long been extinguished by the applicable statutes of repose, *see infra*, § II, and the complaint fails to plead a basic and necessary element of any federal securities law claim:  that plaintiff purchased its Fairfax stock on a U.S.-exchange or in some other U.S.-domestic transaction, *see infra*, § III.

Plaintiff's complaint should thus be dismissed with prejudice, without leave to amend.

---

[1]   Capitalized terms not otherwise defined have the meanings set forth in PwC Canada's Memorandum of Law in Support of Motion to Dismiss the Class Action Complaint, dated December 16, 2011 ("PwC Canada's Op. Br.").

**ARGUMENT**

To avoid unnecessary duplication, PwC Canada adopts and incorporates the points and authorities in the Reply Memorandum of Law in Further Support of the Fairfax Defendants' Motion to Dismiss the Class Action Complaint ("Fairfax's Reply Br."), to the extent applicable to PwC Canada. This brief addresses primarily the distinct issues that pertain to PwC Canada.

I.   **THE PLAINTIFF FAILS TO STATE A CLAIM UNDER SECTION 10(B) OR RULE 10B-5 AGAINST PWC CANADA.**

As set forth more fully in PwC Canada's opening brief, the Court should dismiss the plaintiff's claim under Section 10(b) of the Exchange Act and Rule 10b-5 thereunder (Count I) against PwC Canada, because the complaint fails adequately to allege: (i) a material misstatement by PwC Canada, (ii) any loss proximately caused by PwC Canada, and (iii) scienter on the part of PwC Canada. PwC Canada's Op. Br. § I at 7-21.

A.   **The Complaint Fails to Plead a Material Misstatement by PwC Canada.**

Plaintiff's theory of the case is simple — Fairfax allegedly made a series of misstatements about its financial condition that supposedly inflated its stock price; it issued a series of so-called "corrective disclosures" (which focused on the existence of government investigations that closed without any adverse action); those "corrective disclosures" led to a temporary fall in Fairfax's stock price; and plaintiff, which sold in the midst of these "corrective disclosures," lost money.

But Fairfax's disclosures about government investigations corrected nothing (particularly with respect to any statements by PwC Canada), and in the immediate wake of Fairfax's restatements — the only disclosures Fairfax made related to any accounting mistakes and the only statements relevant to this case that may fairly implicate PwC Canada — Fairfax's stock rebounded to equal and then surpass its Class Period highs. *See* PwC Canada's Op. Br. at 6-7.

This post-restatement rally demonstrates that, contrary to plaintiff's theory, Fairfax's stock price was not inflated by any alleged misstatements but was instead depressed during much of the Class Period because of uncertainty about the outcome of pending government investigations, and then recovered as soon as the market believed the investigations would not lead to an adverse result.

Plaintiff asserts that Fairfax's post-restatement relief rally is "irrelevant," because it post-dated the plaintiff-defined Class Period.  Pl.'s Opp'n Br. at 31.  *In re Burlington Coat Factory Securities Litigation*, on which plaintiff relies for this argument, *id.*, does not support plaintiff's view; it instead holds that a misstatement is material only if it inflates the price of the firm's stock.  114 F.3d 1410, 1425 (3d Cir. 1997) (citing *Shaw v. Digital Equip Corp.*, 82 F.3d 1194, 1218 (1st Cir. 1996); *Raab v. Gen. Physics Corp.*, 4 F.3d 286, 289 (4th Cir. 1993)).  In this case, Fairfax's post-restatement rally demonstrates that its stock price was not inflated during the Class Period.  Accordingly, plaintiff has not pled a *material* mistatement.  *Id.*

### B.    Plaintiff Fails to Adequately Plead Loss Causation.

Plaintiff's theory of loss causation is that "[a] series of disclosures" relating to government investigations of Fairfax somehow "revealed that Fairfax was not [] successful" and that "the Company had concealed massive financial irregularities."  Pl.'s Opp'n Br. at 51-52.  But plaintiff does not — because it cannot — explain how Fairfax's disclosure of government investigations that ultimately went nowhere[2] revealed the falsity of any prior statement by Fairfax, let alone by PwC Canada.[3]  Plaintiff instead urges that the "nature of the corrective

---

[2]    *See* PwC Canada's Op. Br. at 3-7.

[3]    *See In re Global Crossing, Ltd. Sec. Litig.*, 471 F. Supp. 2d 338, 348 (S.D.N.Y. 2006) (citing *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 175 (2d Cir. 2005)) (holding that the plaintiff must allege "that the market reacted negatively to a corrective disclosure *regarding the falsity of prior statements*" in order to establish loss causation (emphasis added)).

disclosure is not critical" and thus that a "report of an SEC investigation" can *on its own* constitute a "corrective disclosure."[4] Pl.'s Opp'n Br. at 52.

The two cases plaintiff cites in support of this assertion stand for no such thing:

- In *In re Bradley Pharms., Inc. Securities Litigation*, the defendant company announced, in a single press release, *both* an SEC investigation *and* that, "in light of the ongoing SEC staff inquiry and separate counsel's review, *the Company will not be releasing its 2004 earnings at this time, as originally anticipated*."[5] 421 F. Supp. 2d 822, 825 (D.N.J. 2006) (emphasis added).

- *In re Winstar Communications* has nothing to do with alleged "corrective disclosures" based on government investigations; it instead involves a company whose stock price dropped precipitously after an analyst issued three reports within two weeks that for the first time revealed the company's financial troubles, including improper accounting; the company went into bankruptcy less than a month later. 2006 WL 473885, at *5 (S.D.N.Y. Feb. 27, 2006).

---

[4] Plaintiff's opposition also attempts to bolster its loss causation argument by mischaracterizing both the March 22, 2006 press release and the allegations about that release in the complaint. Whereas the opposition refers to the March 22, 2006 press release as an "announcement of new SEC subpoenas *related to alleged misstatements* in the February 10th announcement that Fairfax's problems were limited to OdysseyRe," Pl.'s Opp'n Br. at 53-54 (citing Compl. ¶ 561) (emphasis added), the press release in fact neither refers to alleged misstatements nor attempts to cabin the SEC's subpoena to any particular statement about OdysseyRe. Likewise, paragraph 561 of the complaint — which plaintiff cites as the basis for this misleading argument in its opposition — says nothing whatsoever about any "alleged misstatements." Accordingly, any suggestion by the plaintiff that the March 22, 2006 press release contained any reference to an allegation of a prior misstatement by any defendant is *both* factually incorrect on its face *and* outside the scope of the allegations in the complaint.

[5] Two weeks later, the *Bradley* issuer disclosed that as a result of "the lawsuits, SEC inquiry, [and] Audit Committee review" it was "withdrawing its previously announced financial guidance for unreported periods." 421 F. Supp. 2d at 825.

The supposedly "corrective" disclosures on which plaintiff relies did not disclose shortcomings in Fairfax's financial statements; and unlike the reports of the *Winstar* analyst, neither the government nor even the fact of its investigation revealed anything at all about Fairfax's financial condition.

Rather, what plaintiff characterizes as Fairfax's "corrective disclosures" corrected nothing; they instead gave notice of government investigations that led neither to a government enforcement action nor to any adverse financial outcome. The only actual disclosures of any accounting mistakes in this case were Fairfax's restatements (correcting prior period accounting errors) during the July through November 2006 timeframe, which plaintiff explicitly disclaims,[6] and which, in any event, led to gains, not losses, for Fairfax shareholders. *See* PwC Canada's Op. Br. at 6-7. Plaintiff's loss causation allegations thus fail as a matter of law.

### C. The Complaint Fails to Allege With Particularity Facts Supporting a "Strong Inference" That PwC Canada Acted With Intent to Defraud.

Plaintiff argues that the complaint establishes PwC Canada's scienter with allegations (i) that PwC Canada's audits violated GAAS and (ii) that PwC Canada ignored alleged "red flags."[7] Pl.'s Opp'n Br. at 45. For allegations of auditor recklessness to "satisfy securities fraud scienter, 'such recklessness must . . . represent[] an extreme departure from the standards of ordinary care. It must in fact, approximate an actual intent to aid in the fraud being perpetrated by the audited company.'" *Stephenson v. PricewaterhouseCoopers, LLP*, 768 F. Supp. 2d 562, 572 (S.D.N.Y. 2011) (quoting *Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000)).

---

[6]   Pl.'s Opp'n Br. at 31 ("[T]he restatement's effect on stock price . . . is irrelevant.").

[7]   Plaintiff also does not respond to PwC Canada's argument that the complaint is flawed in that it fails to allege "opportunity" to deceive the plaintiff, as well as motive. *See* PwC Canada's Op. Br. § I.C.2 at 18-19.

In the first instance, not one of plaintiff's purported "Confidential Witnesses" — on which it primarily relies for its scienter allegations in the complaint and its scienter arguments in its opposition — has anything whatsoever to say about what PwC Canada allegedly knew. Instead, plaintiff relies — with respect to PwC Canada — on its "red flag" allegations, which consist of nothing more than a litany of provocatively captioned "facts" that, even if true, do not include anything from which the Court might infer scienter against PwC Canada. *See Stephenson*, 768 F. Supp. 2d at 574 ("[F]lags are not red merely because the plaintiff calls them red."). Indeed, plaintiff does not — because it cannot — point to any *actual* red flags known and ignored by PwC Canada. In the opposition, plaintiff focuses on what can only be assumed to be its three best examples of alleged "red flags" purportedly ignored by PwC Canada. Pl.'s Opp'n Br. at 46-47. None of the three withstands even cursory examination:

| | |
|---|---|
| "[K]nown history of securities law violations" | Plaintiff does not refer to a single past violation of law or regulation. The complaint and then the opposition instead rely on analysts' questions and a 2004 letter from a hedge fund analyst that was purportedly copied to a PwC Canada partner and that apparently addressed an alleged discrepancy in Fairfax's stock and bond holdings. |
| | Plaintiff never explains what these have to do with a "known history of securities law violations." |
| "[I]ntentional misapplication of accounting principles" | Plaintiff offers no allegation, apart from a passing reference to the same inapposite 2004 letter, that PwC Canada ever learned of any alleged misapplication of accounting principles by Fairfax. |
| | Plaintiff grouses about the burden of having to plead that auditors knew of, and ignored, "red flags." Pl.'s Opp'n Br. at 46. "[C]ourts in this Circuit[, however,] have consistently dismissed fraud claims against auditors . . . that have not sufficiently alleged that an auditor knew of red flags." *Stephenson*, 768 F. Supp. 2d at 573 (collecting cases). |

- 6 -

| | |
|---|---|
| "[A]lteration of documents" | Plaintiff does not identify a single document that was altered but instead alleges, first, that Fairfax allegedly lacked risk protocols and, second, that Fairfax consequently must have altered documents to pretend it had risk protocols. Pl.'s Opp'n Br. at 46-47. Plaintiff pleads no actual facts supporting its contention that documents must have been altered. |
| | Plaintiff's flight of fancy "does not translate into an inference that [PwC Canada] knowingly or recklessly participated in a fraud at the Company." *In re BISYS Sec. Litig.*, 397 F. Supp. 2d 430, 450 (S.D.N.Y. 2005) . |

## II. PLAINTIFF CANNOT SAVE ITS CLAIMS FROM EXTINGUISHMENT BY THE STATUTE OF REPOSE BY RELYING ON *AMERICAN PIPE* TOLLING.

All the parties agree that plaintiff's claims are subject to a statute of repose[8] (15 U.S.C. § 77m (Securities Act claims); 28 U.S.C. § 1658(b) (Exchange Act claims)); Fairfax and PwC Canada believe that statute has run, while plaintiff believes it should have been tolled under the *American Pipe* doctrine, which provides that "commencement of a class action suspends the applicable statute of *limitations* as to all asserted members of the class who would have been parties" until class certification is denied (or the action is dismissed). *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) (emphasis added). *American Pipe* reflects an exercise of "judicial power to toll statutes of *limitation*" to further the purposes of "the provisions of Fed. Rule Civ. Proc. 23 regulating class actions in the federal courts." 414 U.S. at 558, 540 (emphasis added). The disagreement boils down to whether *American Pipe*'s equitable tolling doctrine applies to statutes of repose.

The Second Circuit has explained that statutes of repose are *substantive* in nature, because they extinguish the underlying right to sue (rather than merely procedurally barring a remedy, as a statute of limitations does), sometimes even before the cause of action can accrue.

---

[8]  *See* Pl.'s Opp'n Br. § I.C, at 23-27 & tbl on p. 28; PwC Canada's Op. Br. § II.A, at 21-22; Fairfax's Op. Br. § I.A, at 10-12.

*P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 102-03 (2d Cir. 2004) (citing *Stuart v. Am. Cyanamid Co.*, 158 F.3d 622, 627 (2d Cir. 1998)). Accordingly, under the Rules Enabling Act, the Federal Rules of Civil Procedure — and necessarily a judicially-created rule premised on the Federal Rules — cannot "abridge, enlarge, or modify [the] substantive right" to repose. 28 U.S.C. § 2072(b).

Plaintiff asserts that applying *American Pipe* tolling to statutes of repose would nevertheless be consistent "with the legislative scheme of the Securities and Exchange Acts," Pl.'s Opp'n Br. at 19 (internal quotation marks omitted), and "with the purposes underlying Rule 23." Pl.'s Opp'n Br. at 21 (citing *In re Morgan Stanley Mortg. Pass-Through Certificates Litig.*, 810 F. Supp. 2d 650, 668 (S.D.N.Y. 2011)). Plaintiff further argues it is "irrelevant" that the *American Pipe* doctrine derives from the Supreme Court's interpretation of Rule 23 and therefore cannot modify substantive rights under the Rules Enabling Act, because "'[t]he proper test is not whether a time limitation is substantive or procedural, but whether tolling the limitation in a given context is consonant with the legislative scheme.'" Pl.'s Opp'n Br. at 19 (quoting *Am. Pipe*, 414 U.S. 557-58) (internal quotation marks omitted).

Plaintiff, however, ignores that the *American Pipe* decision explicitly concluded (in a footnote immediately following the text quoted by plaintiff) that it was *not* "abridg[ing] or modify[ing] a substantive right afforded by [law]" by applying "judicial tolling [to] the statute of *limitations*." 414 U.S. at 558 n.29 (emphasis added) (citing 101 Cong. Rec. 5131 (1955) (describing the addition of the statute of limitation in question in *American Pipe* as "strictly a procedural limitation" and "in no way affect[ing] the substantive rights of individual litigants")). Accordingly, the *American Pipe* doctrine — because it is derived from the Federal Rules — cannot alter the substantive extinguishment and repose of plaintiff's claims as provided by 15

- 8 -

U.S.C. § 77m (for Securities Act claims) and 28 U.S.C. § 1658(b) (for Exchange Act claims).[9]

*See In re Lehman Bros. Sec. & ERISA Litig.*, 800 F. Supp. 2d 477, 482 (S.D.N.Y. 2011);

*Footbridge Ltd. Trust v. Countrywide Fin. Corp.*, 770 F. Supp. 2d 618, 625-26 (S.D.N.Y. 2011).

### III. PLAINTIFF FAILS TO STATE A CLAIM UNDER *MORRISON* AND ITS COMPLAINT SHOULD BE DISMISSED WITH PREJUDICE.

#### A. Plaintiff has effectively conceded that its complaint fails to state a claim under *Morrison*.

Plaintiff's opposition implicitly concedes that the complaint fails to plead that plaintiff purchased its Fairfax stock on a U.S. securities exchange or in some other U.S.-domestic transaction, as required by *Morrison v. National Australia Bank Ltd.,* 130 S. Ct. 2869 (2010).[10] For the first time *in its opposition brief* — and then just in passing — plaintiff claims to have "purchased Fairfax stock on the New York Stock Exchange ('NYSE') during the Class Period . . . and filed this action on behalf of all purchasers of Fairfax securities on a U.S. exchange." Pl.'s Opp'n Br. at 2.  The opposition does not refer to any pleading to that effect in the complaint,

---

[9]     *Cf. Albano v. Shea Homes Ltd. P'ship*, 254 P.3d 360, 366 (Ariz. 2011) ("*American Pipe* tolling is a court-created rule based on policy considerations and principles underlying Rule 23. . . . We cannot, however, employ a court-adopted rule of procedure to alter the substantive effect of a statute of repose.  We have repeatedly recognized that when a constitutionally enacted substantive statute conflicts with a procedural rule, the statute prevails." (citing Ariz. Rev. Stat. § 12-109(A), Arizona's analog to the Rules Enabling Act)).

[10]     *See, e.g.*, *Cornwell v. Credit Suisse Grp.*, 729 F. Supp. 2d 620, 625-26 (S.D.N.Y. 2010) (holding that under *Morrison*, Section 10(b) liability "would not extend to foreign securities trades executed on foreign exchanges even if purchased or sold by American investors, and even if some aspects of the transaction occurred in the United States"); *In re Royal Bank of Scotland Grp. PLC Sec. Litig.*, 765 F. Supp. 2d 327, 338 n.11 (S.D.N.Y. 2011) ("[T]he *Morrison* Court clearly expressed that the territorial reach of the Exchange Act and Securities Act involves the '*same* focus on domestic transactions.'" (quoting *Morrison*, 130 S. Ct. at 2885) (emphasis in *Royal Bank of Scotland*)); PwC Canada's Op. Br. § III at 25-26 & n.23 (collecting cases).

presumably because there is none to be found;[11] it instead cites to a declaration submitted by Plaintiff's counsel as an attachment to the brief in opposition. Pl.'s Opp'n Br. at 2 (citing Alba Decl. Ex. 1). It is "axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." *O'Brien v. Nat'l Property Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) (citing *Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F. Supp. 518, 526 (S.D.N.Y. 1977); *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).[12] And it is therefore plain that plaintiff failed to allege a requisite element of a federal securities law violation, and the complaint should be dismissed with prejudice.

      **B.    Plaintiff failed to avail itself of the opportunity to cure its patently defective pleading, and should not be given leave to replead.**

Plaintiff could have cured this defect in its pleadings through an amendment as of right pursuant to Rule 15(a)(1)(B). Instead, plaintiff filed a brief in opposition, attempting to bolster a patently deficient pleading, and necessitating the filing of this reply. Given that plaintiff chose to forego its amendment as of right, presumably to get yet another bite at the apple, and thereby caused defendants to incur unnecessary costs, plaintiff should not be given leave to replead following dismissal, and plaintiff should reimburse defendants for their costs in replying to

---

[11]     *Compare* Compl. ¶¶ 21-22, 58 (alleging that plaintiff purchased Fairfax stock which was "*traded* on the New York and Toronto stock exchanges" and that plaintiff purports to represent a class consisting of "all persons or entities who purchased and/or acquired Fairfax securities *listed or registered* on an American stock exchange during the Class Period" (emphasis added)) *with* Pl.'s Opp'n Br. at 2 ("Plaintiff purchased Fairfax stock *on* the New York Stock Exchange [] during the Class Period . . . and filed this action on behalf of all purchasers of Fairfax securities *on* a U.S. exchange." (emphasis added)).

[12]     *Accord* 2 James Wm. Moore et al., *Moore's Federal Practice* ¶ 12.34[2] (3d ed. 2012) ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a)."); *see also Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." (internal quotation marks omitted)).

plaintiff's brief in opposition to the instant motion.  *See Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 647 (6th Cir. 2006) (upholding sanctions where counsel's "actions were taken, at the very least, in the face of an obvious risk that [it] was increasing the work on the other party without advancing the litigation").

## CONCLUSION

For the foregoing reasons, the Court should dismiss the plaintiff's complaint with prejudice.

Dated: April 11, 2012
       Washington, DC

Respectfully submitted,

WILMER CUTLER PICKERING HALE AND
   DORR LLP

By:   */s/ Christopher Davies*

Christopher Davies
Ben Brown (*pro hac vice*)
Scott M. Litvinoff
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone: (202) 663-6000
Facsimile:  (202) 663-6363

*Attorneys for Defendant PricewaterhouseCoopers LLP, Toronto, Ontario, Canada*